CONNIE L. FIXMER *et al.*, Plaintiffs-Appellants, v. THE REGIONAL BOARD OF SCHOOL TRUSTEES OF KANE COUNTY ILLINOIS *et al.*, Defendants-Appellees.

Second District   No. 2—85—0814

Opinion filed August 26, 1986.

Larry M. Amoni, of Aurora, for appellants.

Thomas K. Prindable, of Batavia (Randy K. Johnson, of counsel), for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

This appeal involves a petition for detachment and annexation of a subdivision known as Lakeside of Sans Souci (hereinafter referred to as Lakeside). The detachment of Lakeside is sought from Kane County Unit School District No. 302 (hereinafter Kaneland district) which is located in both De Kalb and Kane counties and the annexation of Lakeside is sought to West Aurora School District No. 129 of Kane County (hereinafter Aurora district). Lakeside is comprised of approximately 56.6 acres which lie within the corporate limits of the city of Aurora.

The petition for detachment and annexation was properly signed and filed with the regional board of school trustees of Kane County pursuant to the statutory requirements of section 7—1 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 7—1). In accord with section 7—6 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 7—6), the regional board of school trustees of Kane County convened and heard evidence concerning the petition. Thereafter, the board denied said petition. Upon administrative review of the regional board's decision under section 7—7 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 7—7), the circuit court affirmed the decision of the board. This appeal is taken from the order of the circuit court affirming the board's denial of the petition.

The facts are not in dispute. Petitioners are residents of Lakeside, a single-family residential subdivision having 110 lots; 32 of the lots are improved with homes and 23 of the homes were occupied when the detachment petition was filed. Lakeside, as part of Kaneland district, is bordered on the north, east and partially to the west, by single-family residential property that is part of the Aurora district to which annexation is sought. When the detachment petition was filed, five children from Lakeside were attending public school in the Kaneland district. The distance those children traveled to attend classes in the Kaneland district was approximately 15 to 16 miles, in one direction. If the detachment area were annexed to the Aurora district, the distance to be traveled would be reduced to less than 3 miles to attend the appropriate elementary, junior high or high school. The Aurora district has an approximate enrollment of 8,000 students; Kaneland district in comparison has a total of 2,000 students.

There was testimony from two experts at the hearing before the

regional board. Lakeside's expert, Dr. Keith Getschman, testified that based primarily upon the relative distances for Lakeside children to attend schools in Kaneland or Aurora districts, those children residing in Lakeside would most naturally associate socially with children in the Aurora district. Dr. Getschman was of the opinion that it is best for children to have a common body of associations and friends with whom they interact in school and in their community. Though he did not feel that there was necessarily any physical or psychological detriment to children resulting from the increased travel time for Lakeside students attending the Kaneland district school, he felt less travel time did mean greater opportunities for participation in extracurricular activities. In relation to such activities, Dr. Getschman did acknowledge that normally in a smaller educational setting there would be found greater extracurricular participation. In his estimation both school districts offered appropriate curriculum to meet the normal educational needs of students. Dr. Getschman did not talk with any of the Lakeside pupils attending Kaneland district school.

Dr. Ray Bandlow, the superintendent of Kaneland district, testified as an expert for the Kaneland district. He pointed out that the Kaneland district included a number of subdivisions similar in character and geographical delineations to Lakeside; he stated that it was not unusual for the school children in the district to associate with other children from other communities in addition to their affiliations with the Kaneland district. As an example of an "inter-community" activity, he mentioned the Tri-Cities Soccer League which includes Kaneland district students and students from other school districts. Dr. Bandlow concurred with Dr. Getschman regarding the integral role extracurricular activities, including athletics, occupy in a student's overall normal growth. However, Dr. Bandlow pointed out that 70% of students in the Kaneland district did participate in one or more extraacademic school activity or athletic program. He related that over 50% of the children in the seventh and eighth grades in his district participated in track. He noted that the distance some students had to travel created special problems and that in response the school booster club provides a player bus to transport students who remain after school for practice.

The academic reputation of Kaneland district was another basis for Dr. Bandlow's opposition to detachment and annexation of Lakeside; he stated that Kaneland students outscored other elementary students nationally at an 82% level on the National Iowa Basic Skills Test; that high school academic performance showed ACT scores higher than the other area high schools. In addition, Dr. Bandlow stressed the significance of continuity in social and educational activities and the unneces-

sary disruption that would be caused to the five Lakeside pupils now attending school in the Kaneland district. In addition to the testimony of the two experts, a number of Lakeside residents were heard in favor of or in opposition to the petition.

Both sides agree that the area proposed to be detached from the Kaneland district constituted approximately one percent of the total current assessed valuation of the Kaneland district. Dr. Getschman, petitioner's expert, was of the opinion that the proposed change would not adversely affect the financial ability of the Kaneland district. However, Dr. Bandlow, Kaneland's superintendent, stated that a one percent loss in revenue would have a serious effect on Kaneland's financial ability as great effort is necessary to reduce expenditures by as much as one percent; further, he was of the opinion that detachment would create instability that would impair long-range planning for the district.

The petitioners contend that the regional board of school trustees in this matter erroneously found a one-percent revenue loss for the Kaneland district to result in a significant negative financial impact. Further, petitioners claim that contrary to the finding of the regional board, the proposed detachment of Lakeside would overwhelmingly enhance the educational welfare of the current and future public school students of Lakeside.

The legislature has empowered a county board of school trustees to alter boundaries of school districts through detachments and annexation proceedings. The law provides that the county board of school trustees:

> "shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted ***." (Ill. Rev. Stat. 1983, ch. 122, par. 7—6).

Here, the regional board of school trustees considered these elements and denied the proposed detachment.

The evidence adduced before the board indicated that detachment and annexation would not render either district unable to meet State prescribed educational standards. The approximate one-percent loss in tax revenues to the Kaneland district is not disputed but the parties differed completely as to the effect upon the district. (See, *e.g.,*

*Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 193-94 (requiring a showing of "a serious depletion of tax resources"); *Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 401, (whether a detaching district will remain financially healthy and able to meet the statutory standards for recognition).) There was no evidence to show that detachment would either promote or be harmful to the best interests of the schools of the area.

■ The remaining statutory criterion is the educational welfare of the pupils. A number of factors have been relied upon to define this concept, such as, the degree to which the child in the detachment area naturally identifies with the area to which annexation is sought (*Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 397-98; *City National Bank v. Schott* (1983), 113 Ill. App. 3d 388, 391-92); distances from petitioners' homes to various schools (113 Ill. App. 3d 388, 393-94; *Virginia Community Unit School District No. 64 v. County Board of School Trustees* (1963), 39 Ill. App. 2d 339, 344-45); convenience to petitioning parents and their children (*Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 193-94; *Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 553); the promotion of continuity in the educational experience (*School District No. 106 v. County Board of School Trustees* (1964), 48 Ill. App. 2d 158, 162-63; *Wirth v. Green* (1981), 96 Ill. App. 3d 89, 91); and the choice of parents and children in the detachment area (*City National Bank v. Schott* (1983), 113 Ill. App. 3d 388, 391; *Wirth v. Green* (1981), 96 Ill. App. 3d 89, 92).

■ Petitioners in this matter have the burden to show that it is in the best interests of the area schools and the pupils' welfare to allow a change of boundaries. (*Rhinehart v. Board of Education* (1971), 132 Ill. App. 2d 1078, 1082.) They must be able to show support of their petition with substantial evidence. (*Wheeler v. County Board of School Trustees* (1965), 62 Ill. App. 2d 467, 472-73; *Albrecht v. Newcomer* (1964), 53 Ill. App. 2d 24, 28-29.) An examination of the record here reveals conflicting evidence at best. Dr. Getschman, petitioners' expert, testified that the natural identification of Lakeside children would be with the Aurora district. Attending school in one's "natural community" was posited by Dr. Getschman to promote greater participation in extracurricular activities to maximize a positive educational experience. But Dr. Getschman also stated that smaller schools, such as the Kaneland school as compared to Aurora district, are more conducive to student involvement in extracurricular matters. Respondents' expert, Dr. Bandlow, and Lakeside parents with children attend-

ing Kaneland school related a high degree of student extracurricular activity and academic achievement. It was clearly established before the board that a change in school-district boundaries would benefit the Lakeside students by reducing travel time on the bus and reducing the risk of accident. However, a reduction in the distance traveled is not, in itself, a sufficient basis for granting the petition.

The promotion of continuity in the overall educational experience of the Lakeside-subdivision school children attending public school at the time of the hearing would best be served by denial of the detachment petition. Respondent's expert emphasized the disruption in a child's learning created by changing schools and friends. The only children to testify, three of the five public school children living in the Lakeside subdivision, expressed a desire to remain with their friends at Kaneland district school and to continue with that school's extracurricular programming.

The final two factors significant in the context of the educational welfare of the pupils can be considered in combination, *i.e.*, the convenience to the petitioners and their children and the choices of the remaining Lakeside-subdivision residents and their children. The testimony of those in favor of and in opposition to detachment resulted in a decided preference by those most directly impacted, *i.e.*, those with children currently attending public school, to maintain the status quo by defeating the detachment petition. Several parents indicated they had intentionally located in Lakeside subdivision in order to send their children to Kaneland district and to school and, therefore, opposed the detachment. As mentioned, three Lakeside public school children expressed their wishes to remain in the Kaneland district. It is significant that in all of the cases cited by petitioner to support the petition to detach and annex where there were parents in the detachment area who had children in the public school, those parents either supported the petition or at least did not object to it.

While the courts have recognized the significance of the personal choices of the residents of the detachment area as a factor in determining the educational welfare of the affected students, this factor takes on added importance in this case. There was no evidence in support of the petition from any parent whose children would be changing schools if the petition to detach was granted. However, there was testimony in opposition to the petition from parents and children who would be forced to adjust to a new school.

Petitioners contend that it is proper to consider the social and educational needs of future school children who may locate in the Lakeside subdivision. The only cases to acknowledge the potential benefits and

detriments of detachment for future residents and their children were initiated by real estate developers and involved vacant land. (See *City National Bank v. Schott* (1983), 113 Ill. App. 3d 388; *Rhinehart v. Board of Education* (1971), 132 Ill. App. 2d 1078.) Petitioners cite no authority in support of this position nor is this court aware of any such principle as applied to the facts.

■ The role of the judiciary on administrative review is limited to a determination that the board applied the statutory standards and that the decision was not contrary to the manifest weight of the evidence. (*Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 396-97; *School Directors v. Wolever* (1962), 26 Ill. 2d 264, 268.) The evidence set forth above is conflicting and the findings of fact made by the regional board are supported by evidence adduced before the board. In light of the record, this court cannot hold that the decision of the board is against the manifest weight of the evidence.

■ The final issue raised by petitioners is the alleged reversible error committed by the board in allowing the affected Lakeside school children to testify concerning a change of schools. Petitioners contend not that these children were incompetent to testify, but rather that it was improper for the board to lend any weight to the needs and concerns of five school children when the real issue is the welfare of the school districts, the community as a whole, and future generations of Lakeside students. In support thereof, petitioners cite *Oakdale* for the proposition that the needs of a few cannot supplant the welfare of many. (*Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 193-94.) However, it is well settled in detachment and annexation proceedings that the personal preferences and conveniences of those in the detachment area, parents and children, are to be considered, though they are not to be determinative of the detachment issue standing alone. See *Board of Education v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 233; *Board of Education v. Regional Board of School Trustees* (1980), 84 Ill. App. 3d 501, 504.

For the reasons stated hereinabove, the decision of the regional board of school trustees of Kane County is affirmed.

Affirmed.

NASH, P.J., and HOPF, J., concur.