JACK PHILLIPS *et al.*, Plaintiffs-Appellees, v. THE SPECIAL HEARING
BOARD OF BOONE-WINNEBAGO COUNTIES *et al.*, Defendants-Appel-
lants.

Second District No. 2—85—0960

Opinion filed December 16, 1986.—Rehearing denied January 22, 1987.

James M. Hess, of Pedderson, Menzimer, Conde, Stoner & Killoren, of Rockford, for appellants.

Charles E. Cronauer, of Burns, Cronauer & Turner, of De Kalb, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

This appeal concerns a petition to detach certain territory from Rockford Charter School District No. 205 and annex it to Meridian Community Unit School District No. 223. The petition was filed pursuant to section 7—2.4 of the School Code (Code) (Ill. Rev. Stat. 1983, ch. 122, par. 7—2.4), which governs petitions to detach territory from special charter school districts. Because the Rockford board of education opposed the petition, a hearing was held before a special hearing board as provided by section 7—2.5 of the Code (Ill. Rev. Stat. 1983, ch. 122, par. 7—2.5). The hearing board denied the petition without making findings of fact. On administrative review, the circuit court of Winnebago County reversed that order, finding it to be against the manifest weight of the evidence. The Rockford board appeals the circuit court's decision and requests reinstatement of the hearing board's order denying the petition. We affirm the circuit court's decision.

The subject property is approximately 3,000 acres of land along the southern border of District 205. It is bounded on the north and northeast by the Rock and Kishwaukee Rivers, which separate it from the rest of District 205. It is surrounded on its very irregular west, south, and southeast sides by District 223 (Stillman Valley District), to which the petitioners request it be annexed. Eighty percent of the 223 registered voters residing in the subject area signed the detachment petition. At the time of the hearing, 77 school-age children resided there.

The parties stipulated that detachment would not affect the ability of either district to meet the State Board of Education's standards of recognition. They also stipulated that both districts are levying taxes at their maximum rates and that detachment would result in a net yearly loss of $123,520, or .13% of its yearly budget, to District 205 and a net gain of $142,000 to District 223.

At the hearing, 10 detachment-area residents testified, as did representatives of both school districts. Only one detachment-area

resident, a teacher for Rockford District 205, testified in opposition to detachment, stating that her children preferred Rockford schools. The other residents who testified strongly supported detachment. Rather than attempt to review the testimony given by each, we will summarize their reasons as follows. They identify strongly with the Stillman Valley (District 223) community, in which several of them or their families were raised and which is a smaller, more closely-knit community than Rockford. They also believe it more closely resembles the semi-rural detachment area. They attend church in Stillman Valley and do the bulk of their shopping, banking, and socializing in that community. They described their own and their children's participation in Stillman Valley community activities, including sports leagues, Scouts, and 4-H clubs, many of which use District 223 facilities. The majority of their children's friends live in Stillman Valley and attend District 223 schools. They believe that their children will greatly benefit from an educational environment shared with their friends in their natural community. One parent noted that more than 70% of Stillman Valley students are involved in extracurricular activities, and a number of the parents stated that such participation would be far more convenient for both themselves and their children in Stillman Valley than it is in Rockford. The Stillman Valley schools have much lower suspension and drop-out rates, which the parents believe reflects better discipline and a better learning environment.

The parents were also dissatisfied with District 205's busing system. Although the District 205 and Stillman Valley grade schools are approximately equal distances from the subject area, the District 205 junior high and high schools are, using estimates given by Rockford officials, anywhere from 2.2 to 8.2 miles farther than the corresponding Stillman Valley schools. Detachment-area children attending high school in District 205 must leave school after the sixth period, when the last bus leaves for the subject area, eliminating any possibility of scheduling an additional, seventh period, class or attending after-school activities unless they can arrange other transportation. The Rockford area schools which serve the detachment area are up to 7.4 miles apart, creating problems for parents who wish to pick up children from more than one school either after school or after extracurricular activities. The parents were also concerned that the Rockford route uses a dangerous turnaround point and requires small children to walk too far to their buses. In addition, the detachment area is in what Rockford officials term a "blue route" to which service is cancelled when the weather is hazardous. However, classes are not cancelled for the rest of the district, requiring the

detachment-area students to make up the work missed.

David Miller, the superintendent of District 223, testified that if detachment is allowed, his district can offer the area a flexible bus schedule allowing students to attend all classes. In addition, the District 223 bus service is nearly door-to-door, will not use any dangerous turnaround points, will involve significantly less travel time for most of the students, and will not be cancelled unless classes are cancelled. The Stillman Valley schools are only .4 miles apart, which will allow parents to easily pick up children at more than one school and permit older and younger children from one family to travel at the same time on the same bus.

Mr. Miller also testified to the quality of Stillman Valley's curriculum, including agriculture and horticulture classes not available at Rockford. He stated that Stillman Valley students can elect to attend Rockford's vocational center for special training with transportation provided for them during the regular school day. Stillman Valley students score above the national average on standardized tests and approximately 55% of the high school graduates go on to college or trade schools.

George Aschenbrenner, assistant superintendent of Rockford schools, testified for District 205. He stated that District 205 has excellent facilities, including two swimming pools and a weight room, which Stillman Valley does not have. Also, if the demand is sufficient in any given term, District 205 offers a number of courses, such as drama and advanced math classes, which are not available in Stillman Valley. In addition, District 205 offers specialized alternative programs at various locations throughout Rockford which are not available through District 223. A greater percentage of District 205 teachers have post-graduate degrees than District 223 teachers. District 205 students score at or above the national average on standardized tests, and approximately 50% of Rockford high school graduates continue their educations. He concluded that, while the basic programs at Stillman Valley and District 205 are comparable, District 205's program is more extensive and diverse and its physical facilities, at least at the high school level, are outstanding.

The District 205 transportation director testified to the good safety record of the Rockford district buses and to the fact that detachment would save Rockford only about $2,000 per year in transportation costs. A District 205 architect testified the district has allocated approximately $2 million to make necessary repairs to schools attended by detachment-area students. The District 205 attendance coordinator testified that at least 50 of the detachment pe-

titioners work in Rockford and that the detachment territory was considered as part of a growth area in the district's long-term plans for student distribution and building closings. If the district board had anticipated detachment, its plans may have been substantially different. Arthur Johnson, the superintendent of the Rockford school district, also testified, stating that detachment would disrupt planning for the district.

■ The only question presented for review is whether the decision of the hearing board was against the manifest weight of the evidence. Section 7—2.6 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 7—2.6), sets out the duties of a special hearing board:

> "The Hearing Board (a) shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto, and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, (b) shall take into consideration the division of funds and assets which will result from any change of boundaries, and the will of the people of the area affected, and (c) shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils should such change in boundaries be granted."

Detachment is allowed only where "the benefit to the annexing district and the detachment area *** clearly outweighs the detriment resulting to the detaching district and the surrounding community as a whole." See *Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 397; *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 194.

Rockford District 205 argues that detachment would result in a financial detriment to it and cause it administrative difficulties by disrupting the district's long-term plans. A financial detriment to the losing district alone, however, is not a sufficient basis for denying a detachment petition unless the loss would be a serious one. (See *Board of Education v. Regional Board of School Trustees* (1981), 98 Ill. App. 3d 599, 605; *Board of Education v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 233; *Fromm v. Will County Board of School Trustees* (1976), 41 Ill. App. 3d 1045, 1049.) The yearly loss here would be $123,520, or .13% of the district's budget—clearly a minimal amount. (See *School District No. 106 v. County Board of School Trustees* (1964), 48 Ill. App. 2d 158, 165 (gross loss of under 2.5% of the district's budget insufficient to warrant denial of detachment petition); *cf. Manning v. Regional Board*

*of School Trustees* (1981), 92 Ill. App. 3d 945, 947 (loss of property assessed at $158,000 from $38 million total assessed valuation insignificant).) However, "[w]hether a detaching district will remain financially healthy and able to meet the statutory standards for recognition is more important than the size of the loss *** [it] must bear." (*Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 401.) District 205 has produced no evidence showing that the loss will render the district financially unsound and, in fact, concedes the detachment will not impair its ability to meet statutory standards.

Furthermore, just as detachment necessarily results in some financial loss to the detaching district (see, *e.g., Board of Education v. Regional Board of School Trustees* (1981), 98 Ill. App. 3d 599, 605; *Board of Education v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 233), it also necessarily results in some disruption in planning. The evidence clearly establishes that the money allocated to schools near the detachment area was for "urgent and necessary" repairs to bring the buildings into compliance with the State's life-safety standards. District 205's argument that its plans *may* have been different had detachment been anticipated is mere speculation, correctly discounted by the circuit court.

■ Similarly without merit is District 205's argument that it should have been permitted to present evidence of other future and pending detachments which might be encouraged if the instant petition is granted. (See *Richey v. County Board of School Trustees* (1973), 13 Ill. App. 3d 68, 70; *Board of Education v. Scott* (1969), 105 Ill. App. 2d 192, 201 (Code requires factual determination of merits of instant petition rather than speculation of contingent future detachments); *Wheeler v. County Board of School Trustees* (1965), 62 Ill. App. 2d 467, 476 (speculation cannot be the basis for denying detachment petition).) Such evidence is only admissible where a succession of detachment petitions has actually been filed against the detaching district. (*Kaupas v. Regional Board of School Trustees* (1977), 47 Ill. App. 3d 222, 226.) There has not been a succession of petitions filed against the Rockford school district. District 205 has thus failed to establish that detachment would result in a substantial detriment to it.

■ Even in the absence of substantial detriment to the losing district, however, petitioners must establish that detachment is in the best interests of the affected district and the educational welfare of the pupils. (See *Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 664; *Board of Education v. Regional*

*Board of School Trustees* (1980), 84 Ill. App. 3d 501, 504; *Bowman v. County Board of School Trustees* (1974), 16 Ill. App. 3d 1082, 1085.) The hearing board must consider the following factors relative to the students' educational welfare: (1) the differences between the districts' facilities; (2) the effect detachment will have on either district's ability to meet statutory standards of recognition; (3) the effects on tax revenues; (4) the relative distances of the districts from students' homes; (5) identification of the detaching area with the annexing district; (6) the likelihood of child and parent participation in school activities, and (7) the convenience and personal desires of parents and children. (*Board of Education v. Regional Board of School Trustees* (1981), 98 Ill. App. 3d 599, 603-04; *Board of Education v. Regional Board of School Trustees* (1980), 84 Ill. App. 3d 501, 504; *Bowman v. County Board of School Trustees* (1974), 16 Ill. App. 3d 1082, 1085.) As already discussed, detachment will only negligibly affect tax revenues and will have no effect on the districts' abilities to meet statutory standards. The evidence clearly establishes that detachment-area residents identify strongly with Stillman Valley, that the Stillman Valley District 223 schools are closer and more convenient to them, that petitioners and their children are far more likely to participate in District 223 activities, and that they overwhelmingly favor detachment.

In addition, recent cases indicate that in evaluating a child's educational welfare, the "whole child" should be considered, as should a determination of where his "community of interest" lies. (*Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 397; *Dresner v. Regional Board of School Trustees* (1986), 150 Ill. App. 3d 765, 775-76; *City National Bank v. Schott* (1983), 113 Ill. App. 3d 388, 393-94.) These concepts require evaluating the residents' "practical educational and social needs" by "comparing * * * the quality and physical proximity of both the schools and the extracurricular facilities and programs offered by the competing school districts, as well as the safety of the children. And, when the competing districts are located in separate communities, a determination must be made as to the [residents'] natural gravitation * * * to one or the other community." (113 Ill. App. 3d 388, 393; see also *Rhinehart v. Board of Education* (1971), 132 Ill. App. 2d 1078, 1083 (physical proximity and natural identification with the community bears "directly upon the educational welfare of the pupils").) District 223's schools are closer to the detachment area, making bus transportation safer and less time consuming. (See *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 509.) Over 70%

of District 223's students participate in extracurricular activities, and the petitioners have testified that their own and their children's participation in such programs would be greatly enhanced by annexation to that district. Detachment-area residents naturally identify with and gravitate to the Stillman Valley community. Many detachment-area children already participate in Stillman Valley community activities. Their friends reside there, and, because of the irregular district borders, many of their close neighbors attend school there. In addition, the detachment area is a semi-rural community with which the petitioners and their children are more likely to share common values and goals. Consideration of the "whole child" and "community of interest" concepts results in the inescapable conclusion that the evidence overwhelmingly favors detachment.

The evidence as to quality of facilities is inconclusive. District 205 has some physical education facilities not available in District 223, but its junior high school will require over $1 million worth of work to its fire-safety equipment and its heating, ventilation, and electric systems simply to bring it into compliance with State standards. Additionally, its closest grammar school cannot currently accommodate physically handicapped students. Although District 205 offers more classes and alternative programs than does District 223, the evidence is clear and uncontradicted that distance and inadequate transportation render those activities largely unavailable to the petitioners. (*Cf. Burnett v. Massac Community Unit District No. 1* (1981), 96 Ill. App. 3d 616, 624 (detachment warranted in spite of detaching district's greater number of courses and better facilities); *Ottawa Township High School District No. 140 v. County Board of School Trustees* (1969), 106 Ill. App. 2d 439, 447 (no requirement that annexing district must have superior curriculum or facilities).) Both districts clearly offer their students excellent educations, but the proximity to District 223 and the affinity of detachment residents for the Stillman Valley community clearly indicate that detachment-area children and the entire Stillman Valley community would benefit by annexation to District 223. The evidence simply does not support a conclusion that detachment from District 205 would result in any educational detriment to detachment-area students or any significant detriment to the Rockford school district.

In addition, the School Code requires that a special hearing board consider the "will of the people" in assessing the merits of detachment. (Ill. Rev. Stat. 1983, ch. 122, par. 7—2.6; see also *Dresner v. Regional Board of School Trustees* (1986), 150 Ill. App. 3d 765, 777 (noting no similar provision where the school board it-

self holds the hearing).) The personal choices of detachment-area residents cannot be overlooked (see, *e.g.*, *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 510-11), particularly where there is a "decided preference by those most directly impacted *i.e.*, those with children currently attending public school" (*Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 665). Eighty percent of the area residents signed the detachment petition. In addition, all but one of the residents testifying in favor of detachment were parents of school-age children who would be directly affected by detachment. We therefore agree with the trial court's conclusion that the hearing board improperly discounted the preference of the residents in denying the petition for detachment.

 █ A reviewing court must affirm a hearing board's decision unless it is contrary to the manifest weight of the evidence. (*Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 396.) Although a reviewing court is not permitted to reweigh evidence presented to the board, or to substitute its judgment for that of the board (89 Ill. 2d 392, 397; *Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 666; *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 508), it must nevertheless examine the evidence and set aside an order not supported in fact (*City National Bank v. Schott* (1983), 113 Ill. App. 3d 388, 392, citing *Oakdale Community Consolidated District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190). It is the opinion of this court that the evidence presented before the special hearing board does not support its decision to deny the detachment petition.

For the reasons stated above, the decision of the circuit court of Winnebago County is affirmed.

Affirmed.

HOPF and WOODWARD, JJ., concur.