TERRY DESMOND *et al.*, Plaintiffs-Appellants, v. THE REGIONAL BOARD OF SCHOOL TRUSTEES, MALTA COMMUNITY UNIT SCHOOL DISTRICT NO. 433, *et al.*, Defendants-Appellees.

Second District   No. 2—88—0437

Opinion filed May 17, 1989.—Rehearing denied June 20, 1989.

William P. Brady and Howard R. Wertz, both of Gallagher, Klein & Brady, of De Kalb, for appellants.

Michael P. Coghlan, State's Attorney, of Sycamore, and Jack Deere, of De Kalb, for appellees Regional Board of School Trustees and De Kalb Community Unit School District No. 428.

James R. Buck, of Klein, Stoddard & Buck, of Sycamore, for other appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiffs, Terry and Joann Desmond, filed a petition requesting that their property be detached from the Malta Unit School District 433 and be annexed to the De Kalb Unit School District 428. Following a hearing, the regional board of school trustees of the County of De Kalb denied the petition. Plaintiffs then filed a complaint for ad-

ministrative review. The circuit court affirmed the hearing board's decision, holding that it was not against the manifest weight of the evidence. Plaintiffs now bring this appeal. The sole issue raised on appeal is whether the hearing board's decision was against the manifest weight of the evidence. We affirm.

In their petition, plaintiffs alleged that their property does not contain a school building; that there would be no nonhigh school territory resulting from the granting of the petition; that their property is compact and contiguous with De Kalb Community Unit School District 428; that the change of boundaries will not cause either district to have a population of less than 2,000, or an equalized assessed valuation of less than $6 million; and that the best interests of the schools of the area and the educational welfare of the people demand that a change in boundaries be granted.

A hearing before the board took place on September 1, 1987. Traci Desmond, daughter of the plaintiffs, testified as follows. She is presently 17 years of age and a senior in high school. She presently attends De Kalb High School as a tuition student, although prior to this year, she attended Malta High School and Malta Grade School.

Most of Traci's testimony centered around the academic advantages she would have at De Kalb High School as opposed to Malta High School. Her class schedule at De Kalb includes several humanities and arts classes which are not offered at Malta. She is also taking Spanish IV, in preparation for a year abroad in a Spanish-speaking country as part of the Rotary Exchange Program, and chemistry. Spanish IV is not offered at Malta. Traci also expressed interest in journalism and communications. De Kalb offers several extracurricular activities which she believed would be helpful in fostering her interest in these fields. Traci also indicated that De Kalb has more teachers than Malta, allowing teachers to teach courses for the most part in their specialized areas.

Traci also testified that she presently lives in De Kalb Township, five miles outside the city limits of Malta. Because of this distance, it was difficult to maintain relationships with the other students at Malta High School. It was difficult for her to see her friends until she got a driver's license. Traci also attends church in De Kalb.

At one point in Traci's testimony, counsel for the Malta school district requested that her testimony be stricken as irrelevant to the issue involved in the hearing. Counsel for the plaintiffs responded that the comparison between the two school districts was an important issue in the case. He further pointed out to the board that its own counsel would advise them as to the law in this proceeding. The testi-

mony was not stricken.

On cross-examination by counsel for Malta, Traci testified that she has attended 5½ days of classes at De Kalb.

In response to questions by the board members, Traci testified that she had three levels of Spanish at Malta and presently was fluent in Spanish. She needs three or four more credits to graduate from high school.

Dr. Guy Banicki, superintendent of the Malta school district and called as a witness by plaintiffs, opined that the de-annexation sought by plaintiffs would have a substantial impact on the Malta school system. Given that the assessed valuation of plaintiffs' property was $30,000, the de-annexation from Malta would result in $1,200 coming out of Malta's budget. Dr. Banicki testified that $1,200 exceeds Malta's entire art curriculum or is about one-half of the physics and chemistry budget. Presently, the budget for the Malta school system is a little over $1 million. Thus, $1,200 would be one one-thousandths of Malta's total budget.

Dr. Banicki testified that the amount of State aid per pupil is $738. Because Traci is not attending Malta High School, the only loss from the granting of the petition would be the $738 paid for Courtney, plaintiffs' other daughter, who is presently in the sixth grade. Thus, the total amount to be lost in the event the petition is granted is approximately $2,000.

According to Dr. Banicki, while he could not make an assessment on the educational impact of the proposed de-annexation, he did state that it would not affect Malta's recognition by the State. The Malta school board opposes the petition and is concerned about what other people might do if the petition was granted.

Dr. Banicki testified further that although De Kalb is the largest school system in the county, while Malta is the smallest (there are 99 students at Malta High School), Malta offers sufficient courses to enable its graduates to go on to college. Eighty-nine percent of its graduates went on to college the previous year, either two-year or four-year institutions. Dr. Banicki stressed that due to the smaller class sizes at Malta, there was better interaction between teacher and pupil and, given the smaller community, a "better partnership between home and school."

Dr. Banicki disagreed that the Malta budget did not allow for special programs for gifted or above average students. In addition to new subjects being added to the curriculum, such as advanced English, Malta belonged to the Kishwaukee consortium. If a student needs to take a college preparatory class which is not offered at Malta, the stu-

dent may take the course at Kishwaukee College and then be reimbursed and given full credit for the class.

Dr. Banicki also testified that he is familiar with North Central Association, an evaluation group that evaluates high school programs. Although Malta is accredited by the State of Illinois, it was not visited the previous year by North Central Association. In response to a question from the board, Dr. Banicki indicated that he did not know if it made any difference whether or not a school district was accepted or recognized by the North Central Association.

Joann Desmond, one of the plaintiffs, testified that she is the assistant superintendent of instruction and grants for the De Kalb public schools and is completing work on her doctorate in education and administration. Both of her daughters, Traci and Courtney (age 12), have attended Malta schools up to this point. She has resided at her present address for 15 years.

According to Mrs. Desmond, Traci has expressed concern to her regarding the limitations of curriculum and extracurricular activities at Malta. Counsel for Malta objected on the basis of hearsay and relevancy. Counsel for the board indicated that the testimony should be admitted as part of Mrs. Desmond's testimony regarding what is in the best interests of Traci, and the board concurred.

Mrs. Desmond pointed out the scheduling conflicts at Malta that required Traci to choose between two classes, both of which she needed for college. De Kalb offers more opportunities to take classes and a wider variety of classes. Also, at Malta, a student could have the same teacher for several classes, which would be a problem if the relationship is not a good one. According to Mrs. Desmond, at De Kalb, "where you have that many teachers working on an area of curriculum, it is a well defined and well developed area of curriculum, and there are a number of educational advantages that result from that." Over two-thirds of the teachers at De Kalb have at least their master's degrees. Both of her daughters were planning to continue their education past the high school level.

Mrs. Desmond also testified that a North Central accreditation "is an indication of a high quality education system" and represents an advantage to students looking to get into competitive schools.

Mrs. Desmond further testified that the plaintiffs' property is located halfway between the city limits of De Kalb and Malta, and if the petition were granted, transportation would be available to the De Kalb school system by bus.

In explaining the reason why annexation to De Kalb would be in the best interests of her children, Mrs. Desmond stated as follows:

"The primary reason is educational opportunity. Opportunity for both of my children.

Traci has an opportunity this year to participate in a gifted humanities class, which would allow her to take at the completion of this class, an advanced college placement test, which would give her three hours of credit for college without having to take that course.

She has opened up new avenues to explore in terms of deciding what she wants to do with her life and her career because she has access to activities that will give her a knowledge about those things she is most interested in, and the high school curriculum is a primary concern.

Courtney in a few years will be going to high school. There is an additional problem with Courtney. That is with physical education.

As a parent, De Kalb High School offers—they have a swimming pool, and my daughter could participate in swimming throughout high school.

My youngest daughter (Courtney) has juvenile rheumatoid arthritis, and we are not sure what that will mean for her, but the likelihood is—something like swimming her doctor has indicated would be very, very helpful to her because she may be limited."

Mrs. Desmond again stressed the lack of scheduling conflicts at De Kalb and concluded by saying it was a matter of educational opportunities.

On cross-examination, Mrs. Desmond testified that plaintiffs' property is 1½ miles from Malta High School and approximately 5 miles from the De Kalb High School. She admitted that the De Kalb public school bus would have to pass other homes in the subdivision where plaintiffs lived to pick up their children for school.

Mrs. Desmond also admitted that Traci could have taken chemistry her junior year and, in fact, had enrolled in the class but had to drop out due to health reasons. She was aware of the deficiencies in the De Kalb school district noted by the North Central Association but stated that those problems had been addressed.

Mrs. Desmond further testified that at the present time, Traci is attending De Kalb High School for which plaintiffs are paying the tuition. Thus, it is possible for her to remain at De Kalb High School without the board rearranging the districts; however, the plaintiffs are paying the tuition pending the outcome. Mrs. Desmond conceded that they could move into the De Kalb district, but they did not choose

to do so at this time.

In response to a question by one of the board members, Mrs. Desmond stated that they had looked into the possibility of Traci taking chemistry at Kishwaukee College, but Traci could not fit it into her schedule.

Terrence Desmond testified that he is the county clerk of De Kalb County. Prior to that, he taught in the Sycamore school system for 11½ years and holds master's degrees in school administration and history.

Mr. Desmond agreed with his wife's testimony regarding their daughters' educational opportunities. In addition, he indicated that the choice of schools was not an easy one given the friendships his daughters have built up in the community of Malta, as well as his own association with the people in the Malta school district. In his opinion, Malta has some fine teachers, but, due to scheduling problems, Traci would not be able to take those courses she needs to graduate. Since the same restrictions might occur in Courtney's case, he and his wife chose to file a petition for annexation to the De Kalb school district. Mr. Desmond was aware that a recent referendum to consolidate the two school systems failed.

Thereafter, counsel for plaintiffs attempted to introduce as an exhibit the final plan for the De Kalb County regional organization committee. The exhibit was objected to by counsel for Malta. After some discussion and remarks by the board's attorney, the board voted that the exhibit not be admitted.

Mr. Desmond testified further that for the most part, his family's social, work, and church interests were in De Kalb. He believed that the advantages in the De Kalb school district substantially outweighed the advantages in the Malta school district and that the granting of the petition was important for both Traci's and Courtney's education.

On cross-examination, Mr. Desmond testified that when he and his family purchased their property in 1973, it was in the Malta school district and has been so since 1953. Mr. Desmond admitted that when they purchased the house, they already shopped and attended church in De Kalb. Finally, Mr. Desmond stated that his testimony was given in his capacity as a parent and not as county clerk.

At the close of plaintiffs' evidence, two documents were entered into the record: a letter from the superintendent of the De Kalb school district stating that the district had no objection to the annexation petition and would accept the board's decision on the petition; and the objection of the Malta school district to the petition for annexation.

Dr. Guy Banicki was recalled as a witness on behalf of Malta. According to the witness, if the petition for annexation were granted, the district would lose approximately $1,200 in property tax and $783 in State aid per child, or approximately $2,800 in total. Dr. Banicki repeated that the $1,200 exceeds Malta's art curriculum budget and represents over one-half of the physics and chemistry budget. Banicki stated that as superintendent, he has to plan the budget and make long-term plans for the school. The budget is a year-long project requiring him to know how many students are anticipated, how much faculty is needed, what courses to offer, and the boundaries and any potential changes to them.

Dr. Banicki also testified that because De Kalb is larger than Malta, the annexation, if granted, would have more effect on Malta than it would have on De Kalb because of the relative size of their budgets.

Dr. Banicki stressed that Malta High School had the advantage of both a small and large school because of its small size and its ability to send students to nearby Kishwaukee Junior College to take courses not offered at Malta.

On cross-examination, Dr. Banicki indicated that some people might feel that the educational opportunities at De Kalb High School exceed those at Malta High School. Other than the report filed by North Central, nothing would lead him to believe that the quality of teachers at De Kalb was any less than the quality of teachers at Malta. Dr. Banicki agreed that the North Central report had good things as well to say about the De Kalb school system and that if Malta had been subject to the same scrutiny, there would have been good and some negative points reported.

In response to questions from the board, Dr. Banicki stated that Traci could attend De Kalb High School by paying tuition, and Malta would then not receive the $783 in State aid for Traci. Dr. Banicki did not know if Traci could take courses in humanities, journalism, or chemistry at Kishwaukee College.

Mary Burgess, principal of Malta High School, testified for Malta as follows. In addition to being principal, Ms. Burgess teaches one class. There are 99 students enrolled in Malta High School and 20 teachers, 10 of whom are full time. The average class size over the past two years has been between 11 to 13 pupils, whereas she understood that at De Kalb, it was 28 to 29 pupils per class. She felt that the students at Malta benefited from the more personal attention they received at Malta.

Ms. Burgess' overall impression of the education at Malta was

that it was of very high quality. Malta was adding more college preparatory courses. Last year 82% of Malta's graduates went on to college. While there were some courses Malta did not offer, she did not think that a high school existed which offered every conceivable course. Between what Malta and Kishwaukee College offered, Malta students have available to them the courses needed to go on to any university or college in the nation.

According to Ms. Burgess, Malta offers various extracurricular activities, including sports programs. Because of its small size, Malta students get more opportunity to play. There are student clubs, National Honor Society, Students Against Drunk Driving, and band. The band has received the highest award consistently for the last 75 years with the Illinois High School Association.

On cross-examination, Ms. Burgess indicated that while 82% of Malta students went on to further education, 25% to 30% went on to a four-year college. Ms. Burgess could not "fully agree" that it is extremely important for some students that their education have breadth of courses available to them. However, her personal philosophy was that students should get a solid foundation in the basics: math, science, and English and then expand to other areas. She admitted that Malta was limited in its courses because of its resources, but by using other resources nearby, the courses could be available. She agreed that some parents might have some hesitation about having their children take classes at a college.

Ms. Burgess testified that four other teachers at Malta have advanced degrees. She did not necessarily agree that the more a student has contact with teachers with advanced degrees, there was more likelihood of him or her being able to assimilate the information being taught.

Following closing remarks by the attorneys, the board voted to deny the petition. The circuit court affirmed the board's decision. This appeal followed.

■ We note at the outset that plaintiffs have failed to file a jurisdictional statement in violation of Supreme Court Rule 341(e)(4)(ii) (122 Ill. 2d R. 341(e)(4)(ii)). Because plaintiffs' brief was filed 10 days after the rule was amended to require a jurisdictional statement and our jurisdiction to entertain this appeal is clear, we shall address the merits of this appeal. Parties and counsels are put on notice that future violations of Supreme Court Rules will be dealt with by the appropriate sanctions.

Before addressing the merits of this appeal, we will address plaintiffs' motion to strike defendants' statement of facts for alleged viola-

tion of Supreme Court Rule 341(e)(6) (107 Ill. 2d R. 341(e)(6)).

Supreme Court Rule 341(e)(6) provides in pertinent part as follows:

"Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment ***." (107 Ill. 2d R. 341(e)(6).)

Plaintiffs' motion argues that in their statement of facts, the defendants directly addressed plaintiffs' arguments, used argumentative words, and at one point, addressed what was not in the record, rather than what was in the record.

■■ We agree with the plaintiffs that portions of the defendants' statement of facts are in violation of Supreme Court Rule 341(e)(6). However, since the violations are not such as to hinder our review of the case, we decline to grant the motion to strike. (*Cf. Certified Mechanical Contractors, Inc. v. Wight & Co.* (1987), 162 Ill. App. 3d 391.) Having drawn the violation to counsel's attention, we trust it will not be repeated. See *People v. Madden* (1977), 52 Ill. App. 3d 951.

The sole issue on appeal is whether the board's decision is against the manifest weight of the evidence.

■■ The role of the judiciary on administrative review is limited to a determination that the board applied the statutory standards and that the decision is not contrary to the manifest weight of the evidence. (*Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 666.) Where the evidence is conflicting and the board's findings of fact are supported by evidence, this court cannot hold that a decision of the board is against the manifest weight of the evidence. 146 Ill. App. 3d at 666.

■■ ■ Section 7—2.6 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 7—2.6) sets out the duties of the hearing board as follows:

"The Hearing Board (a) shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto, and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, (b) shall take into consideration the division of funds and assets which will result from any change of boundaries, and the will of the people of the area affected, and (c) shall determine whether it is in the best interests of the schools of the area and the educational welfare of the pupils should such change in boundaries be granted."

With regard to the students' educational welfare, the hearing board must consider the following factors: (1) the differences between the

districts' facilities; (2) the effect detachment will have on either district's ability to meet statutory standards of recognition; (3) the effects on tax revenues; (4) the relative distances of the districts from the students' homes; (5) identification of the detaching area with the annexing district; (6) the likelihood of child and parent participation in school activities; and (7) the convenience and personal desires of parents and children. (*Phillips v. Special Hearing Board* (1986), 154 Ill. App. 3d 799, 805.) However, detachment is allowed only where the benefits to the annexing district and the detachment area clearly outweigh the detriment to the detaching district and the surrounding community as a whole. 154 Ill. App. 3d at 803.

In order to determine if the decision of the board was against the manifest weight of the evidence, we must first address plaintiffs' claims that in reaching its decision, the board was misinformed as to the applicable law and considered improper factors. If we conclude that plaintiffs' contentions of error are correct, we then must determine if there is still sufficient untainted evidence to support the board's decision to deny the petition for detachment.

Plaintiffs contend that the board's determination was adversely affected by misstatements of law made by both Malta's counsel and counsel for the board. Specifically, plaintiffs complain that Malta's counsel stated to the board that the needs of the particular individual were not relevant to the issues raised in this case and that both counsel for the board and Malta's counsel informed the board that while the precedential significance of its decision could not be the sole consideration, the board could consider it in reaching its decision.

Defendants respond that plaintiffs failed to raise as error counsel's misstatements of law in their specifications of error filed in the circuit court's proceedings and, therefore, have waived the argument before this court.

■ Arguments raised for the first time on appeal which could have been raised in the proceedings below are waived. (See *People ex rel. McGraw v. Mogilles* (1985), 136 Ill. App. 3d 67, 74.) Plaintiffs' specifications of error contain no allegations of counsel's misstatement of the law. Rather, they set forth that the board "relied on the effect that this de-annexation would have as a precedent for other cases" and that the board erred in denying the petition though there was substantial evidence that the plaintiffs' children would benefit by attending De Kalb schools. Although in their specifications of error plaintiffs do not attribute these errors to counsel's misstatements, in the interest of achieving a just result (107 Ill. 2d R. 366), we do not deem this issue waived.

Although Malta's counsel moved to strike Traci Desmond's testimony on the basis that the testimony was not relevant to any issue before the board, the board denied the motion to strike after its own counsel advised that, while the personal desires of the individual could not be the sole consideration, such testimony was admissible at the hearing. (See *Board of Education v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 233.) Thus, we cannot agree with plaintiffs that the board was misinformed as to the law on this point.

Plaintiffs also contend that the board may not consider the "precedential value" of its decision in making its determination to deny the petition, contrary to counsel's statements, relying on *Board of Education v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 233, *Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 553, and *Richey v. County Board of School Trustees* (1973), 13 Ill. App. 3d 68, 70. These cases hold that a detachment petition may not be denied because of the possibility of setting a precedent.

Defendants argue in response that while it may not be the sole basis for the board's decision, "precedent value" may be considered along with other factors. See, *e.g., Ottawa Township High School District No. 140 v. County Board of School Trustees* (1969), 106 Ill. App. 2d 439, 444 (court recognized that there must be a measure of stability in the boundaries of school districts and that they cannot be changed by reason of mere personal preference of the residents of the territory without regard to other material considerations).

In *Richey,* the only evidence in opposition to the detachment was the statement by the district superintendent that the district was opposed to the petition because of the probability of the filing of future petitions to detach territory from the district. The *Richey* court agreed with *Wheeler v. County Board of School Trustees* (1965), 62 Ill. App. 2d 467, in which the court concluded that mere speculation or probability that the requested detachment would set a precedent for the future was not a sound basis for denial of detachment. 13 Ill. App. 3d at 70.

In *Eble v. Hamilton,* the court reversed a trial court order which in turn had reversed a hearing board's denial of a petition to detach, despite allegations that the hearing board had relied most heavily on improper factors such as that the granting of such a petition might set a precedent for future boundary changes by tenants. Although stating that a detachment petition cannot be denied because of the possibility of setting a precedent (citing *Richey*), the court held that there was insufficient evidence to support the granting of the detachment petitions and the board's decision to deny the petition was not

against the manifest weight of the evidence. In *Board of Education v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, the court affirmed the hearing board's decision granting the detachment petition. When, on appeal, the school district, *inter alia*, urged that the allowance of the detachment petition would set a precedent for similar petitions, the court (citing *Eble*) again stated that precedent was not a basis for denying a detachment petition.

■ In our view, these cases disapprove of precedential value as a factor, as plaintiffs suggest. We conclude, therefore, that since counsel's remarks indicated that precedential value could be used as a basis for the board's decision, the board was misinformed as to the applicable law.

In a related argument, plaintiffs contend that the board's decision cannot stand because the board considered improper factors in reaching its decision to deny the detachment petition. Plaintiffs argue that it was improper for the board to consider the precedential impact of the board's decision. We have previously addressed this argument, and we hold to our opinion expressed above.

■ Plaintiffs argue that in reaching its decision, the board considered a statement by the defendants' attorney in closing argument to the effect that the granting of such a petition would encourage the filing of similar petitions. In *Phillips v. Special Hearing Board* (1986), 154 Ill. App. 3d 799, this court held that evidence of other and future detachments which might be encouraged if a petition for detachment were granted is only admissible where a succession of detachment petitions had actually been filed against the detaching district. (154 Ill. App. 3d at 804.) Plaintiffs correctly note that in this case, no such succession of detachment petitions has been filed. Therefore, under *Phillips*, counsel's statement was improper, and this factor should not have been considered by the board.

Plaintiffs also argue that the board improperly considered the impact of its decision on plaintiffs' neighbors and that Terry Desmond held a public office in the county.

In this case, the board made no written or oral findings of fact; thus, there is no indication of what factors the board did consider in reaching its decision. Plaintiffs, however, point to the comment of one board member at the end of the hearing as an indication that these improper factors were the basis for the denial of plaintiffs' petition. The board member commented as follows:

> "The other observation is that I feel uneasy about seeing a school bus go down, as the lawyer brought out—go down to their house and pick up a politician's daughter and take her

back to De Kalb.

I think there are going to be a lot of dissatisfied taxpayers. It will be brought up, I am sure—and it's nothing against Terry or his daughter, but it will be an observation, I am sure."

■ We do not disagree with plaintiffs that the factors that they have labeled improper should not be the basis for the denial of their petition. However, the comment quoted above by one of the seven board members, which was characterized by the board member himself as an "observation," does not establish that the detachment petition was denied on the basis of the above factors. No other board member made a similar statement, comment, or observation. We note that the vote of the board was taken without any discussion among members and that the vote was unanimous. Plaintiffs, therefore, have not convinced us that these improper factors formed the basis of the board's decision to deny the detachment petition.

■ We now turn to plaintiffs' contention that certain comments by defendants' attorney immediately prior to the decision by the board were improper and "cannot be deemed harmless error." Plaintiffs, however, failed to support their argument with authority, in violation of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)), and therefore, it is waived. See *Rockford Memorial Hospital v. Schueler* (1988), 167 Ill. App. 3d 358.

Finally, plaintiffs contend that the board's determination is against the manifest weight of the evidence. Because it appears that certain improper factors were before the board, we must consider the record carefully to determine if the board's decision is based on the statutory factors and is adequately supported by the record.

Under the factors to be considered as set forth in *Phillips v. Special Hearing Board* (1986), 154 Ill. App. 3d 799, 805, the evidence tends to establish the following: (1) while the De Kalb High School offers a wider curriculum, Malta High School, although smaller, offers the advantage of smaller class sizes and through its connections with Kishwaukee College, can make additional college preparatory courses available to its students. We note there was conflicting testimony as to the advantages of a large versus a smaller school; (2) the detachment would have no effect on either district's ability to meet the statutory standards of recognition; (3) there is no disagreement that the detachment would result in the loss of tax revenue to the Malta district. The loss was equated by Malta to its entire arts curriculum budget or one-half of the budget for chemistry and physics department. Although the amount of money indicated seemed relatively small, given Malta's size, we cannot say that the loss of these funds is

not a serious depletion of tax revenues or that the loss of these funds will not affect the financial health and ability of Malta to meet the statutory standards for recognition. (*Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 664); (4) the Malta High School is approximately 1½ miles from plaintiffs' home, while De Kalb High School is five miles; (5) the plaintiffs' property is outside the city limits of Malta and telephoning to Malta is a long distance call; (6) Terry Desmond testified that the choice of changing schools was not an easy one given the friendships his daughter has built up in the community of Malta, as well as his own association with the people in the Malta district; and (7) plaintiffs and their daughter are the only persons who would be affected by the detachment, and they were the only ones to testify.

In *Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, the court, relying on our supreme court opinion in *Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, stated as follows:

> "[M]uch more is needed to support a change in established boundaries than the personal desires or convenience of the petitioner. The welfare of the affected districts and their pupils *as a whole* must control rather than the wishes of a few, and petitions should be granted only where the benefits derived by the annexing and affected areas clearly outweighs the detriment resulting to the losing district and the surrounding community as a whole." (Emphasis in original.) 52 Ill. App. 3d at 553-54.

Plaintiffs rely on this court's decision in *Board of Education, Community High School District No. 154 v. Regional Board of School Trustees* (1980), 84 Ill. App. 3d 501. In that case, the Millers sought detachment of their property from the Marengo school district and annexation to the Woodstock school district so that their son, Greg, a nationally ranked tennis player, could attend Woodstock High School, which featured a competitive tennis program. The Marengo High School did not have such a program, and moreover, Greg, as a nondistrict student, was barred from participating in competitive sports at Woodstock. The evidence further showed that when Millers purchased the property, they believed it to be in the Woodstock district. Greg had attended Woodstock High School until he was forced to transfer. The Millers also owned a business in Woodstock, and the family conducted substantially all of their business and social activities in Woodstock. Both schools offered equivalent educational facilities, and there was no substantial difference in the travel time from the Miller home to either school. No evidence of the revenue loss or its effect was in-

troduced. Stating that while personal preference and convenience alone would be insufficient to authorize such a transfer, this court found that combined with the educational benefits to Greg, the statutory standards were met and affirmed the granting of the detachment petition.

In the case before us, unlike Greg Miller, Traci Desmond has other avenues available through the Malta district of fulfilling her need for college preparatory courses. Although she experienced an interest in areas in which Malta does not furnish courses, she has available to her courses at Kishwaukee Junior College. The fact that over 80% of the graduates from Malta continue their education certainly indicates that although it does not offer as much variety as does De Kalb, she will not be prohibited from attending the college or university of her choice.

As for Courtney Desmond's need for a swimming pool, there was no testimony that Courtney's condition was such that she could not attend school or function without such a facility.

■■ ■ The petitioners in this case have the burden of proof, and they must be able to show support of their petition with substantial evidence. (*Fixmer v. Regional Board of Education of School Trustees of Kane County* (1986), 146 Ill. App. 3d 660, 664.) The evidence at best is conflicting, and although no findings of fact were made by the board, we find that the plaintiffs failed to establish that the De Kalb school district and its pupils would as a whole benefit by the annexation of plaintiffs' property.

In summary, we conclude that, while a misstatement of the law occurred and certain nonstatutory factors were before the board, they did not form the basis of the board's decision and that the decision of the board to deny the detachment petition was not against the manifest weight of the evidence.

The judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT, P.J., and NASH, J., concur.