FIRST NATIONAL BANK OF ELGIN, as Trustee, Petitioner-Appellee, v. WEST AURORA SCHOOL DISTRICT 129, Respondent-Appellant (Regional Board of School Trustees, Kane County, Respondent).

Second District   No. 2—89—1213

Opinion filed July 27, 1990.

Donald Liest, Assistant State's Attorney, of Geneva, Gary K. Mickey, of Puckett, Barnett, Larson, Mickey, Wilson & Ochsen, and Larson, Mickey & Weiler, P.C., both of Aurora (Bernard K. Weiler and Constance B. Renzi, of counsel), for appellant.

McGrath & McGrath, of Wheaton (William R. McGrath, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Petitioner, owner in trust of a large tract of land, filed a petition with the Regional Board of School Trustees of the Kane County Educational Service Region (Regional Board) seeking to detach its property from West Aurora School District 129 (West Aurora) and to annex the property to Batavia School District 101 (Batavia). The West Aurora Board of Education opposed the detachment. The Regional Board conducted a hearing and denied the petition. Petitioner then appealed to the circuit court of Kane County for administrative review. The circuit court found that the findings and decision of the Regional Board were against the manifest weight of the evidence and reversed the decision of the Regional Board. West Aurora now appeals the decision of the circuit court. We reverse the trial court and affirm the Regional Board.

The property in question is 42 acres of a 70-acre tract of vacant farmland located in the most northeasterly corner of West Aurora's district. The remaining 28 acres of the tract, not in issue here, are located within the boundaries of Batavia School District. The property has not been annexed to either the Village of North Aurora or the City of Batavia. However, the parties stipulated that the parcel is located within the Batavia park district, library district, and township and is serviced by the Batavia post office and fire protection district. The land is also within the facility planning area of the City of Batavia for sewer services, although no sewer work had been done as of the time of the court proceedings. Stephen Lane, one of the beneficial owners of the property, testified that, while the tract was currently vacant, the beneficial owners wished to subdivide the 70 acres. This development would include approximately 95 homesites on the 42-acre tract in question. At the hearing before the Board, no evidence of the configuration of the subdivision was introduced.

The parties stipulated to several pertinent matters, including (1) both school districts furnish quality education at all levels; (2) if detachment were granted, both districts would still meet State standards of recognition; (3) an intergovernmental agreement between Batavia District 101 and the Batavia park district existed, calling for sharing of facilities; (4) an intergovernmental agreement existed between West Aurora District 129 and the Fox Valley park district, calling for sharing of facilities; (5) distances from the property to schools in the two districts:

|  | District 129 | District 101 |
|---|---|---|
| High School | West High—6.7 miles | Batavia High—3.1 miles |
| Middle School | Washington—8.1 miles | Batavia Jr., High—2.2 mi. |

| 6th Grade Center | — | McWayne School—2.3 miles |
| Elementary | Schneider—1.8 miles | J.B. Nelson—1.6 miles |
| | by existing roads, but | |
| | parties disagree on ef- | |
| | fect of development | |
| | on this distance | |

(6) the assessed valuation of the property was $7,857, representing .0000227 of District 129's total assessed valuation and amounting to property taxes payable in 1988 of $301.12; and (7) if a change in boundaries was granted, both districts would have adequate populations and assessed valuations to fulfill statutory requirements.

The Board heard testimony from witnesses for both parties. Stephen Lane, one of the beneficial owners of the property, testified as to the intent to subdivide the property. In Lane's opinion, the subdivision would be adversely affected if the property were developed in two school districts. He also stated, as part owner of the property, his personal desire to have the whole site within Batavia's school boundaries.

John Carlson, a licensed real estate broker, also testified for petitioners. Carlson testified that houses in Batavia sold for $10,000—$15,000 more than comparable houses in North Aurora. In addition, he stated that comparable homes in North Aurora sold easier than homes in Batavia.

Dr. Keith Getschman presented expert testimony on behalf of the petitioners. Dr. Getschman opined that, if the entire 70-acre tract were to be developed as one subdivision, the best interests of future students living in the subdivision would be served by including the entire subdivision in one school district. However, he testified that the choice to develop the 70 acres as one subdivision was a choice to be made by the developer. The loss of approximately $300 in taxes to West Aurora if the boundary change were granted would be negligible, according to Getschman.

Michael Wild, an elected member of the Batavia park board, also testified for petitioner. Wild detailed the cooperation between the park district and the Batavia school district, including the sharing of facilities, equipment and instructors. Wild also testified to the proximity of school, park, and library facilities in Batavia.

West Aurora presented the testimony of Michael Pehan, assistant superintendent of business for the district. Pehan related that the future development of the property was considered when the district planned the location of the elementary school that would serve the property. Pehan also testified that, while the district was currently

taxing at its maximum rate, the loss of $300 in taxes from the property would not be detrimental to the district. In addition, Pehan testified that the West Aurora district served a number of communities outside of Aurora, including North Aurora, Batavia Township and Sugar Grove Township. Pehan also related that West Aurora had an agreement with the Fox Valley park district similar to that between the Batavia school and park districts.

Dr. Robert English provided expert testimony for West Aurora. English opined that persons moving into the property in question would not have a preassociation with either Batavia or North Aurora. English also testified that, if the property were not detached, students would spend longer periods of time on buses and drive longer distances than if the parcel were detached.

Following the introduction of the evidence, the Regional Board denied the petition, finding as follows:

"1. Because there are no inhabitants on the property, it is difficult to assess the impact of this boundary change for future students.

2. It would appear from the testimony that the reason for the request for this change was a concern of the developer for higher property values rather than the welfare of the students.

3. From the testimony, there was no clear community of interest established with either Batavia or West Aurora.

4. The West Aurora District (129) testified that the boundary change would be harmful to their planning of student growth around Schneider Elementary School, and thus harmful to the students involved.

In summary, after having heard the testimony, there seems to be no compelling evidence that the future students would benefit from these boundary changes if the board granted the petition."

However, the court on administrative review found that there was "no question that the facts and case law support the petition to deannex [sic]." The court specifically found that dividing the subdivision between two districts would "destroy any concept of neighborhood or community" and that the lengthy travel times to the schools in West Aurora would probably decrease participation of future students from the property in school and related community activities.

"[Furthermore, the court] considered the effects that detachment would have upon the ability of both districts to meet the prescribed statutory standards, as well as the effects on tax revenues of both districts, the distances from the subject prop-

erty to schools in both districts and the identity of the petitioning territory with the district to which annexation is sought. An examination of the two primary exhibits again demonstrates that the subject property is clearly more closely identified with the City of Batavia than with the City of Aurora or even with North Aurora. There are no direct road connections between the subject property and the City of North Aurora. Large vacant areas separate the eastern edge of the residential areas in North Aurora and the subject property. There is less separation from the residential areas at the south areas of Batavia and a major roadway leads directly past the subject property into the residential areas in southern Batavia.

The Court has further considered that 'There is an advantage in having a child attend a school in close proximity to his home' and that 'Children learn better when they have friends in class with whom they associate outside of school.' [Citation.] Clearly, those activities and identification can more easily take place if the subject property is a part of District 101."

The court, therefore, reversed the Board's decision and ordered the Board to take the steps necessary to disconnect the property from the West Aurora District and annex the property to Batavia.

■ The sole issue before this court is whether the Regional Board's decision was against the manifest weight of the evidence. The role of the court on administrative review is limited to a determination that statutory standards are applied and that the decision is not against the manifest weight of the evidence. (*Desmond v. Regional Board of School Trustees, Malta Community Unit School District No. 433* (1989), 183 Ill. App. 3d 316, 326.) If the evidence is conflicting but the Board's findings are supported by evidence, the reviewing court cannot hold that the Regional Board's decision is against the manifest weight of the evidence. *Desmond*, 183 Ill. App. 3d at 326.

■ The disconnection of property from school districts is governed by the School Code (the Act) (Ill. Rev. Stat. 1989, ch. 122, par. 1—1 *et seq.*). Section 7—2.6, which outlines the considerations to be made by a hearing board when evaluating a petition, states in part:

"The Hearing Board (a) shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto, and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, (b) shall take into consideration the division of funds and assets which will result from any change of boundaries, and the will of the people of the area affected, and

(c) shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils should such change in boundaries be granted." (Ill. Rev. Stat. 1989, ch. 122, par. 7—2.6.)

In addition, the benefit to the annexing district and the detaching area must clearly outweigh the resulting detriment to the detaching district and the surrounding community. *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 397.

■ The first two considerations above are not contested here; however, the best interests of the schools and the educational welfare of the pupils remain at issue. In determining educational welfare, the hearing board must consider the following factors:

"(1) the differences between the districts' facilities; (2) the effect detachment will have on either district's ability to meet statutory standards of recognition; (3) the effects on tax revenues; (4) the relative distances of the districts from the students' homes; (5) identification of the detaching area with the annexing district; (6) the likelihood of child and parent participation in school activities; and (7) the convenience and personal desires of parents and children." (*Desmond*, 183 Ill. App. 3d at 326-27.)

We conclude that the Board's decision was not against the manifest weight of the evidence, and we accordingly reverse the circuit court.

Regarding the factors to be considered, we find that the evidence tends to establish: (1) the facilities of the two districts are substantially similar; (2) detachment would not affect either district's ability to meet statutory standards of recognition; (3) the loss of $300 in taxes to North Aurora, the current taxes payable on the undeveloped property, would not affect the fiscal health of the district; (4) with the exception of the elementary schools, which are approximately the same distance from the property in question, the schools of the West Aurora district are more than twice as far from the property as the Batavia schools; (5) there is no identification of the area with one district or the other; (6) if the property is developed as one subdivision, parents and children would be more likely to participate in school activities if the property were contained within one school district; and (7) since no one currently lives on the property, convenience and the personal desires of parents and children are not a factor.

■ It is clear from the evidence that West Aurora would not be detrimentally affected by detachment of the property. However, proof of no detriment to the old district is insufficient to support detach-

ment in the absence of any evidence of benefit to the new district. (*Board of Education of Carrier Mills-Stonefort Community Unit School District No. 2 v. Regional Board of School Trustees* (1987), 160 Ill. App. 3d 59, 64.) West Aurora maintains that the petitioners failed to demonstrate any substantial gain to anyone other than the petitioners or any educational improvement resulting from the detachment.

■■ The only benefit to future students evident in the record is the shorter distances to be traveled if the property is detached. Evidence on all other factors is either conflicting or inconclusive as to particular benefit to future students living on the property. This one factor, while important, is only one of the several factors considered. Reduction of the distance to be traveled is not, by itself, sufficient to grant a petition for detachment. (*Fixmer v. Regional Board of School Trustees* (1986), 146 Ill. App. 3d 660, 665.) We cannot say that the Regional Board's decision was against the manifest weight of the evidence when only this factor clearly stands to benefit future students. The Board must consider the "best interests" and "educational welfare" of the students. The Board is better suited to analyze and work with these concepts than the judiciary. (See *Board of Trustees of Community College District No. 501 v. Illinois Community College Board* (1976), 43 Ill. App. 3d 956, 962.) The evidence presented in this case does not show the benefit to the annexing district to outweigh clearly the resulting detriment to the detaching district. The Regional Board's decision was not against the manifest weight of the evidence. The court on administrative review therefore erred in reversing the Regional Board's decision.

We reverse the order of the circuit court of Kane County and remand the cause to that court with directions to reinstate the order of the Regional Board.

Reversed and remanded.

UNVERZAGT, P.J., and DUNN, J., concur.