(No., 37226.—

SCHOOL DIRECTORS OF SCHOOL DISTRICT NO. 82 *et al.*, Appellants, *vs.* KEITH WOLEVER *et al.*, Appellees.

*Opinion filed November 30, 1962.*

EARL L. SCOTT, of Erie, for appellants.

L. WILLARD NELSON, of Morrison, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of· the court:

The County Board of School Trustees of Whiteside County entered an order detaching certain territory from Spring Hill School District No. 82 and annexing it to Erie School District No. 87. The circuit court of Whiteside County, on administrative review, reversed this order. The Appellate Court reversed the trial court and remanded the cause with directions to affirm the order of the County Board of School Trustees. (34 Ill. App. 2d 95.) We granted leave to appeal from that decision.

It appears from the record that Spring Hill School District No. 82, with an assessed valuation of $635,570, a tax rate of .857, and no bonded indebtedness, maintains a one-room school with one full-time teacher and a part-time teacher who conducts classes in the basement of the school. Erie School District No. 87, with an assessed valuation of $9,665,986, a tax rate of 1.088 and a bonded indebtedness of $287,684, has an average daily attendance of 382.81 students; employs a total of sixteen teachers, two for each grade, has two all-purpose rooms, a school lunch program, furnishes transportation and maintains a kindergarten. The districts both maintain grades one through eight. The area to be detached consists of 509 acres with an assessed valuation of $105,000. If the detachment is allowed, Spring Hill District No. 82 will lose four or five students and an annual revenue in the amount of $900.

The county board also had before it the visitation report on the Spring Hill District. This report states in part as follows:

"The building is small for an enrollment of thirty-one pupils and some classes meet in the basement. Though I cannot approve the use of a basement classroom, if this arrangement must be con-

tinued, immediate consideration should be given to providing suitable furniture, bulletin and chalk boards, bookshelves, and storage facilities. In addition, every precaution should be taken for the safety of the children, including recommendations of the State Fire Marshal for fire safety.

"With the extremely crowded conditions in the classroom and the number of pupils enrolled in eight grades, it is difficult to provide learning experiences to meet the individual needs, aptitudes, interests, and abilities of the pupils. The educational program can meet but minimum standards. * * *

"Considering the limited educational opportunities which are possible under these conditions, this seems an appropriate time for the School Board and people of the Community to examine their aims for the education of the children of this district."

The report further made extensive recommendations for improvement, "if this school is to continue to operate." The administrative director of the department of supervision expressed the hope that the Spring Hill District "will work with all possible speed to be a part of a larger school system that can provide better opportunities."

On the other hand, it appears from the testimony of the county superintendent of schools, that the Erie District "has a fine school." The testimony of both the county superintendent and the president of the Spring Hill School Board indicate that the proposed detachment and annexation would have no adverse effect on the Erie District. The Spring Hill District would also be able to maintain the same educational program and facilities without exceeding the maximum tax rate. At the same time the crowded condition at Spring Hill would be alleviated to the extent of 4 or 5 pupils.

The General Assembly has vested in the County Board of School Trustees the power to change boundaries of school districts within the county by detachment and annexation upon proper petition in the absence of certain prohibiting conditions. (Ill. Rev. Stat. 1959, chap. 122, pars. 4B—1, 4B—3.) It is clear that the petition in this case is sufficient and no prohibiting conditions exist.

The relevant statute further provides that the board "shall take into consideration the division of funds and as-

sets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be granted." Ill. Rev. Stat. 1959, chap. 122, par. 4B—4.

The County Board of School Trustees in the instant case has determined that the statutory considerations are in favor of the proposed detachment. Upon administrative review, the role of the judiciary is merely to determine if this determination is against the manifest weight of the evidence. (*Bucholz* v. *Cummins*, 6 Ill.2d 382; *Logan* v. *Civil Service Com.* 3 Ill.2d 81.) The judiciary is ill equipped to act as a super school board in assaying the complex factors involved in determining the best interest of the schools and the pupils affected by a change in boundaries. Nevertheless, we must determine if the standards prescribed by the legislature are complied with.

The directors of the Spring Hill District insist that there is no evidence supporting the board's determination in this case and cite *Oakdale School Dist.* v. *County Board of School Trustees,* 12 Ill.2d 190, and similar Appellate Court decisions in support of the proposition that although the residents of territories within the district may initiate a petition for detachment because of personal desires or convenience, much more is needed to support the board's decision to change established boundaries.

Clearly the personal welfare of four or five pupils will not justify a substantial detriment to the educational facilities of the entire community involved. However, in *Oakdale* there was "no substantial difference in educational facilities" between the two districts, and detachment would have created a serious depletion of the tax resources of one district, and an overcrowding of the other. We, therefore, concluded from the record in the *Oakdale* case: "The result is a detriment, rather than an improvement, in the educational picture of the entire area."

268

In the case at bar the granting of the petition would be at least one step in attaining the goals recommended by the department of supervision of the office of the State Superintendent of Public Instruction. There would be no detriment to the annexing district, and the overcrowded condition of the Spring Hill District would, at least in some measure, be alleviated. It is also clear that Spring Hill's remaining tax base would be sufficient to maintain and even increase the present facilities without exceeding the maximum tax rate. In addition, it is patent that the educational welfare of the detached territory would be improved.

We conclude that these factors, supported by the record, are sufficient to permit the Board of School Trustees to determine, as they did, that the granting of the detachment petition would be in the best interests of the schools of the area and the educational welfare of the pupils. It must remain for local boards to weigh the relevant factors to determine the action best serving our entire education system. When the entire record indicates, as it does here, that the board has considered the applicable statutory standards and is supported in its conclusion by substantial evidence, its determination must be affirmed.

It, therefore, follows that the judgment of the Appellate Court, reversing the trial court and remanding the cause with directions to affirm the order of the County Board of School Trustees is affirmed. *Judgment affirmed.*