LARRY K. FOSDYCK *et al.*, Plaintiffs-Appellants, v. REGIONAL BOARD OF SCHOOL TRUSTEES, MARSHALL, PUTNAM, AND WOODFORD COUNTIES, *et al.*, Defendants-Appellees.

Fourth District   No. 4—91—0970

Opinion filed August 24, 1992.

J. Brian Heller, of Washington, for appellants.

S. Jeff Funk, of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for appellee Lowpoint-Washburn Community Unit School District No. 21.

John B. Huschen, State's Attorney, of Eureka (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee Regional Board of School Trustees.

JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiffs, Phyllis and Larry Fosdyck, petitioned the Regional Board of School Trustees of Marshall, Putnam, and Woodford Counties (Regional Board) to detach their property from their current school district and annex it to an adjacent district. The Regional Board denied their petition, the circuit court affirmed, and plaintiffs appeal. The only issue on appeal is whether the Regional Board's decision to deny the petition was against the manifest weight of the evidence. We conclude that it was and reverse.

## I. FACTS

On July 15, 1991, plaintiffs filed a petition, pursuant to section 7—6 of the School Code (Code) (Ill. Rev. Stat. 1991, ch. 122, par. 7—6), with the Regional Board seeking to detach approximately 155 acres of land in Woodford County from Lowpoint-Washburn Community School District No. 21 (Lowpoint-Washburn) and annex it to Metamora Community Consolidated School District No. 1 (Metamora Grade School) and Metamora High School District No. 122 (Metamora High School). The 155 acres in the petition consist of six parcels of land owned by various people. The total equalized assessed valuation of the subject property is $39,720, and the property yields $2,081 annually in taxes to the Lowpoint-Washburn School District. This land is largely farmland, and plaintiffs own the only home on the subject property. No registered voters other than plaintiffs reside on the subject property.

At the hearing on this petition, plaintiffs provided uncontradicted testimony regarding their connections with the Metamora school system and their desire for their children to attend school there. Plaintiffs have six children, ranging in age from 3 to 20. Prior to a recent move to their current home, their children have always attended Metamora schools. Plaintiffs originally lived in the Village of Metamora and later moved to Cazenovia, a town near Metamora that also lies within the Metamora school districts. A few years ago, for reasons unrelated to school districting, plaintiffs again moved, this time to their current residence at Route 3, Metamora. Plaintiffs admitted they bought their home knowing that the property was in the Lowpoint-Washburn school district.

Plaintiffs now live on the border between the two districts, but live closer to Metamora High School (4.1 miles) than they do to Washburn High School (8.8 miles). Indeed, they now live 1½ to 2 miles closer to the Metamora schools than when they lived in Cazeno-

via. Partly because of this proximity to the Metamora schools, the children would not need to travel as long to get to school as they would if they attended the Lowpoint-Washburn schools. In addition, Phyllis Fosdyck owns an upholstery business in Metamora, located only six blocks from the high school and 2½ blocks from the grade school. Because of the proximity of her business to the school, she drives her children to the Metamora schools in the morning, and they walk to her business after school to get a ride home. She could not drive the children to Lowpoint-Washburn if they attended that school. Phyllis' business is approximately a five-minute drive from their home, whereas the bus ride to the Lowpoint-Washburn school from their home takes 45 minutes to an hour each direction.

This decreased travel time if the children attended Metamora schools would allow one of the children to start an after-school job he wants in Washington, Illinois. Because of the proximity to his mother's business, he could walk to the upholstery shop after school to pick up a vehicle to drive south to get to work on time. If he needed to ride the bus home from the Lowpoint-Washburn school, however, he could not get to work on time.

Plaintiffs did not focus solely on their proximity to the Metamora schools to support their petition. The children also do not want to leave the Metamora schools. Plaintiffs' 16-year-old son said that he would quit school before he would go to Lowpoint-Washburn; indeed, were it not for the shop class at Metamora High School, the 16 year old has said that he would not stay in school at all.

As to the academic differences between the schools, Phyllis believes that Metamora exceeds Washburn in all areas. Specifically, she mentioned that Metamora's shop class is better than even the local junior college's class, and that the Metamora grade school offers Spanish, which the nine year old has taken. She further stated that she was concerned that the Washburn High School and junior high are in the same building. Conversely, Metamora has separate buildings for the high school and the grade school.

The children also have special needs that the Metamora schools have already accommodated. One child is hypoglycemic, so special arrangements have been made with the Metamora schools to allow him to go to the cafeteria to get food when needed. Another child needs special help with reading, and the Metamora school provides an excellent reading and phonics program to address reading disabilities. Finally, two of the children have deformities in their lower back, and thus have a regular appointment after school, three days a week, with

a chiropractor in Metamora. The children could not make their appointments if they went to Lowpoint-Washburn schools.

The children also all enjoy playing various sports, including football, wrestling, tennis, and track. In addition, the two younger children want to play football and basketball in the future. Metamora offers more extracurricular sports, including wrestling, tennis, and football. Lowpoint-Washburn does not offer any of these sports. Metamora also has a weight-lifting room, two gymnasiums, and a practice room for tennis. Lowpoint-Washburn has none of these facilities. The children also play summer baseball in Metamora, and use the library and swimming pool in Metamora. One of the children plans to become involved in 4-H through the Metamora Grade School.

Plaintiffs also socialize regularly with people who have children in the Metamora schools but do not socialize with people who have children in the Washburn schools. Plaintiffs do their shopping, banking, and socializing in Metamora, and they obtain medical and other services there, as well. Plaintiffs attend the Germantown Hills Baptist Church and must drive through Metamora to go to church. No members of the congregation live in the Washburn area, but some members reside in Metamora. In addition, Phyllis testified that she drives south to Metamora approximately three times a day but travels north to Washburn approximately only six times a year. Larry works at Caterpillar Tractor Company in East Peoria, Illinois, and drives through Metamora to get to work. He stated he travels north to Washburn about 12 times a year.

Finally, plaintiffs have family living in Metamora in case of an emergency. If an emergency occurs and the school cannot contact plaintiffs, the children can walk to their aunt and uncle's home in Metamora, located only two blocks from the high school and six blocks from the grade school. Plaintiffs would have no similar arrangements if the children went to Lowpoint-Washburn.

Plaintiffs also introduced the following exhibits: (1) letters from Leonard Ulrich, Marvin DuBois, and Joseph Garber, landowners in the detachment area, that expressed their approval for the detachment, and a letter from Lawrence DuBois, landowner in the detachment area, stating he did not oppose the petition; (2) a letter from Bob Fredericks, realtor from RE/MAX Realtors, stating that a dwelling located in Cazenovia Township, Woodford County, would have 8% to 10% more fair market value if it was located in the Metamora school district rather than Washburn school district; and (3) Illinois State Board of Education report cards on the school districts involved in the petition. Leonard Ulrich, owner of 29 acres of land listed in the

petition, also testified that he favors the petition being granted. Ulrich further stated he also works in Metamora and has social ties to the community. He stated that he had trouble selling the house the plaintiffs bought because it was in the Lowpoint-Washburn school district.

In opposition to the detachment, Thomas Wagner, superintendent at Lowpoint-Washburn, testified that detaching the 155 acres would decrease Lowpoint-Washburn's tax revenue by $2,000. He stated that although this was not a large sum of money, small districts are struggling for money, and this sum would represent the cost of educating two-thirds of a student for the district. He testified that before plaintiffs moved, they attended a board meeting on July 2, 1990, and requested that the board approve the detachment. The board denied the petition, yet plaintiffs still moved knowing the board's position. At the March 5, 1991, school board meeting, plaintiffs asked the board to reconsider its decision, but the board refused. Wagner stated that the board traditionally refused to approve any detachment request because of the "domino effect" that would occur; in his words, "if this happens to one family who lives on the border, other families that live on the border of our district will seek detachment thus eroding our tax base further."

Barry Belshaw, president of the board of education of Lowpoint-Washburn, testified that Lowpoint-Washburn offered a good curriculum and all classes needed to get its graduates into college. He also stated that the gymnasium and locker rooms separated the grade school from the high school.

A letter from the superintendent of Metamora Grade School stated that the school did not actively seek annexation to its district boundaries at the expense of another school district. However, the letter added that should the Regional Board decide to grant the petition, the school district would gladly accept the children. Similarly, Christie Barrow, president of the Metamora Township Educational Board, testified that the high school took a neutral position on the issue. She stated that the Board did not oppose the annexation and that its facilities and staff would provide a good education to plaintiffs' children should the Regional Board choose to grant the petition.

After hearing the evidence, the Regional Board denied the petition. In its order of denial, it stated that it heard the evidence as to the school needs and conditions of the respective districts to meet standards prescribed by the State Superintendent of Education. The Regional Board also stated that it considered whether the best interest of the schools and the educational and physical welfare of the pu-

pils would be served if the petition were granted. The Regional Board made no other factual findings.

In August 1991, plaintiffs filed a complaint, pursuant to section 7—7 of the Code (Ill. Rev. Stat. 1991, ch. 122, par. 7—7), in the circuit court of Woodford County seeking administrative review of the Regional Board's order. The circuit court affirmed the decision of the Regional Board, and this appeal followed.

## II. ANALYSIS

### A. *Standard of Review*

Under the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.*), the findings and conclusions of regional boards on questions of fact are held to be *prima facie* true and correct. (Ill. Rev. Stat. 1991, ch. 110, par. 3—110.) However, this rule "does not relieve a court of the important duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact." (*Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 195, 145 N.E.2d 736, 738.) When deciding petitions like the present one,

" 'local boards [should] weigh the relevant factors to determine the action best serving [the] entire education system. When the entire record indicates *** that the board has considered the applicable statutory standards and is supported in its conclusion by substantial evidence, its determination must be affirmed.' It is not for a court to reweigh evidence or substitute its judgment for that of the Regional Board." *Board of Education of Golf School District No. 67 v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 396-97, 433 N.E.2d 240, 242, quoting *School Directors of School District No. 82 v. Wolever* (1962), 26 Ill. 2d 264, 268, 186 N.E.2d 281, 283.

### B. *Petitions To Detach and Annex Property*

Section 7—6(i) of the Code provides the following:

"(i) The regional board of school trustees *** shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educa-

tional welfare of the pupils that such change in boundaries be granted ***." Ill. Rev. Stat. 1991, ch. 122, par. 7—6(i).

■ The supreme court has interpreted this statutory standard to require that petitions for detachment be granted only where the *"overall* benefit to the annexing district and the detachment area considered *together* *** 'clearly outweighs the detriment resulting to the losing district and the surrounding community *as a whole.'* " (Emphasis in original.) *Golf,* 89 Ill. 2d at 400-01, 433 N.E.2d at 243, quoting *Oakdale,* 12 Ill. 2d at 194, 145 N.E.2d at 736; see also *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees* (1992), 146 Ill. 2d 347, 356, 586 N.E.2d 1273, 1277.

■ Courts have relied on various factors to determine whether this standard has been met. In *Bowman v. County Board of School Trustees* (1974), 16 Ill. App. 3d 1082, 1085, 307 N.E.2d 419, 421, the court asserted that the controlling factor in the application of the benefit-detriment test was the "welfare of the affected districts and their pupils as a whole." The court also set forth other factors that should be considered, such as the differences between the districts' facilities, the effect detachment would have on either district's ability to meet statutory standards of recognition, the distances from petitioners' homes to both districts, identification of the detaching area with the annexing district, the likelihood of both parent and child participation in school activities, and the convenience and personal desires of the petitioners and their children. *Bowman,* 16 Ill. App. 3d at 1085, 307 N.E.2d at 421; see also *Board of Education of Pearl City Community Unit School District No. 200 v. Regional Board of School Trustees* (1981), 98 Ill. App. 3d 599, 603-04, 424 N.E.2d 808, 812; *Board of Education, Community High School District No. 154 v. Regional Board of School Trustees* (1980), 84 Ill. App. 3d 501, 504, 405 N.E.2d 495, 497-98.

Plaintiffs contend that regional boards must consider the above factors, as well as other judicially approved criteria, to determine whether detachment should be allowed. Lowpoint-Washburn, however, maintains that regional boards must only consider four factors in determining whether to grant or deny a petition for detachment, with consideration of other factors being discretionary. The four mandatory factors are the differences between school facilities and curriculum, the distances from petitioners' home to each school district, the effect detachment would have on each district's ability to meet State standards of recognition, and the impact of the proposed boundary change on the tax revenues of each district.

The apparent confusion regarding the factors the regional board must consider arises from the supreme court's language in *Carver*, wherein the court wrote the following:

"In applying [the] benefit-detriment test, regional boards, and the courts reviewing their decisions, *are* to consider [1] differences between school facilities and curricula, [2] the distances from the petitioners' homes to the respective schools, [3] the effect detachment would have on the ability of either district to meet State standards of recognition, and [4] the impact of the proposed boundary change on the tax revenues of both districts. (*Bowman v. County Board of School Trustees* (1974), 16 Ill. App. 3d 1082, 1085.) They also *may* consider [5] the 'whole child' and [6] 'community of interest' factors: the identification of the petitioning territory with the district to which annexation is sought, and the corresponding likelihood of participation in school and extracurricular activities. (*Golf*, 89 Ill. 2d at 398-99.) Although [7] the personal desires of the petitioning parents *may* be taken into account, more than personal preference is needed to support a change in school district boundaries. *Golf*, 89 Ill. 2d at 400; *Oakdale*, 12 Ill. 2d at 193." (Emphasis added.) *Carver*, 146 Ill. 2d at 356, 686 N.E.2d at 1277.

Because *Carver* states that regional boards "are" to consider some factors and "may" consider others, Lowpoint-Washburn concludes that regional boards need not consider the last three factors. We disagree. In the very paragraph that Lowpoint-Washburn cites as the basis of its argument, the supreme court cites *Bowman* approvingly; yet *Bowman* is *expansive* in its listing of factors that regional boards must consider. Accordingly, we hold that regional boards must consider all evidence presented regarding these factors, including evidence regarding the "whole child," the "community of interest" concepts, and any personal preferences of plaintiffs.

If, after viewing the evidence, a regional board concludes that the detaching district will suffer a substantial detriment if detachment is allowed, it must then consider whether any benefits exist to the annexing district and detachment area that outweigh the detriments. If no offsetting benefits exist, the petition for detachment should be denied. (See *Oakdale*, 12 Ill. 2d at 194, 145 N.E.2d at 738.) Because every detachment and annexation proceeding results in some loss of assessed valuation and tax revenue to the district being reduced in size (*Golf*, 89 Ill. 2d at 401, 433 N.E.2d at 244), the supreme court has held that the financial detriment to the detaching district must be "serious" in order to serve as a valid basis for denying the detach-

ment petition. *Carver*, 146 Ill. 2d at 357, 586 N.E.2d at 1277; *Bowman*, 16 Ill. App. 3d at 1086, 307 N.E.2d at 422; *Board of Education of Jonesboro Community Consolidated School District No. 43 v. Regional Board of School Trustees* (1980), 86 Ill. App. 3d 230, 233, 407 N.E.2d 1084, 1086.

Where the record discloses that the transfer would affect neither district in any substantial measure, the determination should turn solely on the welfare of the pupils in the area subject to detachment. (*Jonesboro*, 86 Ill. App. 3d at 233, 407 N.E.2d at 1086.) In the absence of substantial detriment to the losing district, the petitioner must establish some benefit to the educational welfare of the students in the detachment area. (*Carver*, 146 Ill. 2d at 358, 586 N.E.2d at 1278; *Jonesboro*, 86 Ill. App. 3d at 233, 407 N.E.2d at 1086; *Board of Education, Community High School District No. 154 v. Regional Board of School Trustees* (1980), 84 Ill. App. 3d 501, 505, 405 N.E.2d 495, 498; *Bowman*, 16 Ill. App. 3d at 1085, 307 N.E.2d at 422; *Phillips v. Special Hearing Board* (1986), 154 Ill. App. 3d 799, 804, 504 N.E.2d 1251, 1255.) Mere absence of substantial detriment to either district is insufficient to support a petition for detachment and annexation. School district boundaries should not be changed by reason of shopping, banking, or school preference; instead, those boundaries must be " 'designed with an eye to the educational welfare of the children residing in all the territory to be affected.' " *Carver*, 146 Ill. 2d at 358, 586 N.E.2d at 1278, quoting *Oakdale*, 12 Ill. 2d at 193, 145 N.E.2d at 740.

### C. *Application of the Factors*

Plaintiffs argue that because Lowpoint-Washburn will suffer no substantial financial detriment, the welfare of the petitioners' children should be the deciding consideration in this case. Plaintiffs further argue that because all the evidence shows that petitioners' children will receive a better education in Metamora, the Regional Board's denial of their petition was against the manifest weight of the evidence. We agree.

Plaintiffs also argue that the Regional Board relied on improper factors in denying the petition because the only bases for opposition to detachment were the negligible loss of tax money to Lowpoint-Washburn and the possibility of setting a precedent for further detachments. Plaintiffs note that both of these considerations have been deemed insufficient to deny a detachment petition.

In response, the Regional Board claims that its decision was supported by substantial evidence because there was conflicting evidence

as to which school was better; it could have properly decided to place little weight on the concern for continuity in education, plaintiffs' closer ties to Metamora, and to their community of interest with Metamora because they had moved to the area knowing it was in the Lowpoint-Washburn school district; and the financial loss to Lowpoint-Washburn was significant and not outweighed by any benefit.

■ Looking first to whether there will be a detriment to the detaching district if the petition were granted, the only evidence presented at the hearing regarding a detriment to Lowpoint-Washburn school district was the testimony of the superintendent of the district. He stated that the petition should be denied because of the loss of tax revenue, $2,081, the equivalent of the cost of educating two-thirds of a student, and the possibility of setting a precedent for future detachment.

The equalized assessed valuation of the land sought to be detached equals $39,720 or 0.19% of the district's total assessed valuation. The annual loss to the district would be $2,081 or 0.1% of its yearly revenue. The Regional Board asserts that it could have determined that the loss in revenue to Lowpoint-Washburn was significant and cites *Desmond v. Regional Board of School Trustees, Malta Community Unit School District No. 433* (1989), 183 Ill. App. 3d 316, 538 N.E.2d 1350, to support its proposition. However, we find a 0.1% loss in tax revenue and the 0.19% loss in assessed valuation to be *de minimis* and thus an insufficient basis for denying plaintiffs' petition. See *Carver*, 146 Ill. 2d at 356-57, 586 N.E.2d at 1277-78 (finding a loss of one-half of 1% in assessed valuation or between $1,300 and $1,500 in property tax revenues *de minimis*); *Bowman*, 16 Ill. App. 3d at 1086, 307 N.E.2d at 422 (finding a depletion of less than one-half of 1% of the losing district's assessed valuation to be *de minimis*); *Phillips v. Special Hearing Board* (1986), 154 Ill. App. 3d 799, 803, 504 N.E.2d 1251, 1254 (holding a yearly loss of $123,520 or 0.13% of the district's budget was a minimal amount); *Davis v. Regional Board of School Trustees of Madison County, Worden Unit School District No. 16* (1987), 155 Ill. App. 3d 185, 188-89, 507 N.E.2d 1352, 1354 (maintaining a 0.3% loss in the district's total receipts to be *de minimis*); *cf. Oakdale*, 12 Ill. 2d at 194, 145 N.E.2d at 738 (reversing the granting of the petition where the detachment would have depleted appellants' districts of 10% and 20% of their assessed valuations).

The record contains no evidence showing that the loss of $2,081 will render Lowpoint-Washburn financially unsound or that the detachment would affect that district's ability to meet State standards

of recognition. Moreover, there was no evidence presented relating to whether the maximum tax rate was being levied by the Lowpoint-Washburn district.

We further agree with plaintiffs that denying the petition for detachment cannot be based on any possible precedent this case may set for future detachment petitions. See *Richey v. County Board of School Trustees* (1973), 13 Ill. App. 3d 68, 70, 299 N.E.2d 609, 610; *Wheeler v. County Board of School Trustees* (1965), 62 Ill. App. 2d 467, 476, 210 N.E.2d 609, 613 (speculation cannot be the basis for denying detachment petition); *Davis*, 155 Ill. App. 3d at 190, 507 N.E.2d at 1355 (a detachment petition cannot be denied because of the possibility of setting a precedent); *Eble v. Hamilton* (1977), 52 Ill. App. 3d 550, 553, 367 N.E.2d 788, 790 (petition cannot be denied because of the possibility of setting a precedent).

Because the Regional Board made no findings of fact, the record does not reveal on what factors it relied in denying the petition. To the extent that the Regional Board used the loss in tax revenue and the impact of its ruling on this detachment petition on future detachment proceedings as bases for denying the petition, it erred.

■ We agree with plaintiffs that because detachment would not result in a substantial detriment to the detaching district, the decision regarding their detachment petition should turn on the educational welfare of the students in the detachment area—all of whom happen to be plaintiffs' children. When so examined, we find the Regional Board's decision clearly contrary to the manifest weight of the evidence. The evidence overwhelmingly supports plaintiffs' position that the educational welfare of the students in the detachment area would be enhanced by detachment and that more than personal preference and convenience is at stake. The children would benefit from the shorter distances they would have to travel to school. (*Bowman*, 16 Ill. App. 3d at 1087, 307 N.E.2d at 423; *Jonesboro*, 86 Ill. App. 3d at 233-34, 407 N.E.2d at 1086.) They would further benefit from their strong identification and association with Metamora and the Metamora school district. They have friends in the district and participate in community and school activities. They also obtain needed medical services in Metamora. Moreover, plaintiffs have social and economic ties to Metamora, and no demonstrated ties to Lowpoint-Washburn. The detachment area is part of a community of interest with Metamora, and development of the "whole child" would be fostered by detachment. In *Burnidge v. County Board of School Trustees* (1960), 25 Ill. App. 2d 503, 509-10, 167 N.E.2d 21, 24, the court explained the matter as follows:

"[A]n identification with a school district in a child's natural community center will inevitably result in increased participation in school activities by the child and his parents. Such increased participation cannot but result in an improvement in the educational picture of the entire area."

The fact that petitioners moved into the area knowing it was in the Lowpoint-Washburn school district does not diminish their eligibility to have their petition granted. *Eble*, 52 Ill. App. 3d at 553, 367 N.E.2d at 790; see also *Jonesboro*, 86 Ill. App. 3d at 232-34, 407 N.E.2d at 1085-86.

Further, Metamora school district is larger and offers a wider curriculum. It also offers extracurricular activities in which plaintiffs' children wish to participate, whereas Lowpoint-Washburn does not offer those same activities. Metamora also has facilities not available at Lowpoint-Washburn and separate buildings for its grade and high schools. Although Metamora offers more courses, extracurricular activities, and facilities than Lowpoint-Washburn, we emphasize that this record does not show that Lowpoint-Washburn could not provide a quality education to plaintiffs' children. However, whether Lowpoint-Washburn could provide a quality education to plaintiffs' children is not the issue before us; instead, on this record, the issue is whether plaintiffs' petition should have been granted consistent with the best interests of the educational welfare of the children involved. In our view, the answer is emphatically yes. We conclude by noting that the evidence in this record supporting plaintiffs' petition is considerably stronger than the evidence presented by petitioners for detachment in any of the cases we have cited herein. Thus, we find the decision of the Regional Board is contrary to the manifest weight of the evidence.

### III. CONCLUSION

For the reasons stated, we reverse the order of the circuit court and of the Regional Board and remand to the Regional Board with directions to enter an order consistent with this opinion.

Reversed and remanded with directions.

McCULLOUGH and COOK, JJ., concur.