NO. 4-02-1053 

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DREW D. DUKETT and LAURA J. DUKETT,

          Plaintiffs-Appellants,

          and

WINCHESTER COMMUNITY UNIT SCHOOL No. 1,

          Defendant-Appellant,

          v.

THE REGIONAL BOARD OF SCHOOL TRUSTEES OF CALHOUN, GREENE, JERSEY, and MACOUPIN COUNTIES; and NORTH GREENE UNIT DISTRICT No. 3,

          Defendants-Appellees.

)

)

)

)

)

)))

)

)

Appeal from

Circuit Court of

Macoupin County

No. 02MR19  

Honorable

Thomas P. Carmody,

Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiffs, Drew D. Dukett and Laura J. Dukett (Duketts), seek administrative review of the decision of defendant, the Regional Board of School Trustees of Calhoun, Greene, Jersey, and Macoupin Counties (Regional Board), denying their petition to detach land from one school district and attach it to another pursuant to section 7-6 of the School Code (105 ILCS 5/7-6 (West 2000)).

I. BACKGROUND

The Duketts filed a petition, requesting that their parcel and two adjacent parcels be detached from the North Greene school district (North Greene) and annexed to the Winchester school district (Winchester).  They claim it would be more convenient for the family and more beneficial to the children if they were allowed to be annexed to Winchester.  The Duketts' social, religious, educational, and economic activities are in Winchester.  They have minimal ties to North Greene.

At the hearing on their petition, Laura Dukett provided testimony regarding her desire to be annexed into Winchester.  The Duketts have three children, aged 13, 14, and 15.  They purchased their home, which is situated on 30 acres, in 1993.  The petition includes their property and that of their neighbors.  Laura has worked in the Winchester school district for eight years and is currently the sponsor for the student council.  The family is very involved with their church and the 4-H Club, both located in Winchester.  Through those affiliations, they spend a lot of time volunteering in the Winchester community.  They are not involved in any community activities within the North Greene school district.  Having the children attend the same school where Laura teaches would be convenient for the family and a benefit for the children.  The children would ride to and from school with Laura, she would have direct contact with the children's teachers, and she would be able to catch up with the children regarding their day immediately after school.  They could come to her room after school and do their homework while she was finishing up.  If the children attended North Greene, they would not be able to get to their activities in Winchester after school.

Drew Dukett would also be more involved in the children's activities since he travels through Winchester to his job in Springfield.  He would be able to stop in Winchester on his way home to watch the boys' football practice.  If the children attended North Greene, they would have to ride the school bus, which stops one mile from their home.  The family goes to the doctor and dentist in Springfield.  If the children attended North Greene, Laura and the children would miss more of their school day for medical appointments due to the travel time.  The Duketts do their grocery shopping, other household shopping, and banking in Winchester.  Laura estimated that the family travels to the Winchester community up to 10 times a week and to the North Greene community maybe 3 times a month.

The children attended middle school at the Winchester Christian School.  Because their daughter did not want to leave her friends to attend high school, the Duketts enrolled Bethany in the public high school in Winchester despite the requirement that they pay tuition for her to do so.  Bethany is very involved in their church and 4-H Club in Winchester.  She is also very involved in band.  She is in the concert, marching, and jazz bands at Winchester.  Bethany does not socialize with anyone from the North Greene schools.

The Duketts son, Christopher, is also attending Winchester schools and is planning to start high school there in the fall.  Christopher is involved in their church, 4-H Club, and Boy Scouts in Winchester.  He is currently working on attaining Eagle Scout status.  He plays the trombone in the concert band and the drums in the jazz band.  According to Laura, Winchester's band program is superior to that of North Greene--North Greene does not have a jazz band.

The Duketts' youngest son, Joshua, is interested in going into the field of auto mechanics.  Winchester has mechanics training facilities within the district through the school's industrial arts program.  Other school districts bus their students to Winchester to receive auto mechanics training.

In opposition to the detachment, James Whiteside, the superintendent at North Greene, testified that in his opinion the academic offerings of North Greene were of "great quality."  There was no evidence presented as to any detriment that North Greene would suffer.  North Greene argues that it would not receive the $3,500 per student per year in aid should the detachment occur.  Section 7-6(i) requires that the Regional Board consider the "division of funds and assets" that will result from a detachment and annexation.  105 ILCS 5/7-6(i) (West 2000).  However, we do not find that state aid awarded on a per-pupil basis that the detached district may not receive constitutes a "fund or asset" within the meaning of the statute and is not a proper factor for consideration, especially where, as here, it is not currently received by the district.    

On June 27, 2002, after considering the evidence, the Regional Board denied the Duketts' petition because (1) no evidence was presented to indicate that there was a significant difference in the academic programs between the two districts, (2) the annexation would require the students in the Winchester school district to spend more time on the school bus, and (3) North Greene would suffer financial harm.

On August 6, 2002, the Duketts filed a complaint for administrative review, arguing that the Regional Board's findings and decision were clearly erroneous.  On December 12, 2002, the circuit court entered an order finding that (1) the Regional Board's decision to deny the Duketts' petition was not contrary to the manifest weight of the evidence, and (2) the Regional Board's findings and conclusions were supported by the evidence and the record.  
This appeal followed.

II. ANALYSIS

We first must determine which standard of review applies to this case.  The Duketts claim that we should apply a "clearly erroneous" standard because the question at issue involves mixed questions of law and fact.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 692 N.E.2d 295 (1998).  Defendants claim that we should apply a "manifest weight of the evidence" standard, the standard applied by the circuit court in its order affirming the Regional Board.  We agree with the Duketts and hold that review of an administrative order that involves mixed questions of fact and law should be reversed only if it is clearly erroneous.

In 
Belvidere
, our supreme court held that administrative decisions should not necessarily all be reviewed under the manifest weight of the evidence standard.  The standard of review depends on the issues of the particular case.  When reviewing an administrative agency's findings of fact, the reviewing court should reverse only if those findings of fact are against the manifest weight of the evidence.  On the other hand, when reviewing an administrative agency's conclusions of law, the court should do so on a 
de
 
novo
 basis.  When reviewing an administrative order that involves mixed questions of fact and law, the proper standard of review is somewhere between the two, or clearly erroneous.  
Belvidere
, 181 Ill. 2d at 205, 692 N.E.2d at 302.

The issue before this court involves a mixed question of law and fact.  The Regional Board's finding is, in part, factual because it involves considering whether the facts in this case support a finding that the Duketts' property be detached from North Greene and annexed to Winchester.  Nevertheless, the Regional Board's finding also concerns a question of law because the terms "best interests of the schools" and "the educational welfare of the pupils" found in section 7-6(i) of the School Code (105 ILCS 5/7-6(i) (West 2000)) require interpretation.  Thus, a clearly erroneous standard of review is appropriate.  
Belvidere
, 181 Ill. 2d at 205, 692 N.E.2d at 302.  We now turn to the merits of the appeal.
   

Under the Administrative Review Law (735 ILCS 5/3-101 through 3-113 (West 2000
)), the findings and conclusions of regional boards on questions of fact are held to be 
prima
 
facie
 true and correct.  735 ILCS 5/3-110 (West 2000).  However, this rule "'does not relieve a court of the important duty to examine the evidence in an impartial manner and to set aside an order which is unsupported in fact.'"  
Fosdyck v. Regional Board of School Trustees, Marshall, Putnam, & Woodford Counties
, 233 Ill. App. 3d 398, 404, 599 N.E.2d 70, 74 (1992), quoting 
Oakdale Community Consolidate School District No. 1 v. County Board of Trustees
, 12 Ill. 2d 190, 195, 145 N.E.2d 736, 738 (1957).  When deciding petitions like the present one, 

"'local boards [should] weigh the relevant factors to determine the action best serving [the] entire education system.  When the entire record indicates *** that the board has considered the applicable statutory standards and is supported in its conclusion by substantial evidence, its determination must be affirmed.'  It is not for a court to reweigh evidence or substitute its judgment for that of the Regional Board."  
Board of Education of Golf School District No. 67 v. Regional Board of School Trustees
, 89 Ill. 2d 392, 396-97, 433 N.E.2d 240, 242 (1982), quoting 
School Directors of School District No. 82 v. Wolever
, 26 Ill. 2d 264, 268, 186 N.E.2d 281, 283 (1962).

It is the role of the Regional Board, not a reviewing court, to make findings of fact and to weigh the relevant factors, and the board's determinations and decisions will not be rejected on administrative review unless they are clearly erroneous.  
Belvidere
, 181 Ill. 2d at 205, 692 N.E.2d at 302.
  Accordingly, this court will not reweigh the evidence or substitute its judgment for that of the Regional Board.  We are cognizant, however, of our duty to set aside an order that is clearly erroneous.

Section 7-6(i) of the School Code provides the following:

"(i) The regional board of school trustees *** shall hear evidence as to the school needs and conditions of the territory in the area within and adjacent thereto and as to the ability of the districts affected to meet the standards of recognition as prescribed by the State Board of Education, and shall take into consideration the division of funds and assets which will result from the change of boundaries and shall determine whether it is to the best interests of the schools of the area and the educational welfare of the pupils that such change in boundaries be grant­ed ***."  105 ILCS 5/7-6(i) (West 2000)
.

Under section 7-6, petitions for detachment and annexation should be granted only where the overall benefit to the annexing district and the detachment area clearly outweighs the resulting detriment to the losing district and the surrounding community as a whole.  
Carver v. Bond/Fayette/Effingham Regional Board of School Trustees
, 146 Ill. 2d 347, 356, 586 N.E.2d 1273, 1277 (1992). 
  

In applying this benefit-detriment test, reviewing courts are to consider differences between school facilities and curricula, the distances from the petitioners' homes to the respective schools, the effect the detachment would have on the ability of either district to meet state standards of recognition, and the impact of the proposed boundary change on the tax revenues of both districts.  
Carver
, 146 Ill. 2d at 356, 586 N.E.2d at 1277.

In addition to the factors enumerated above, courts may consider the "whole child" and "community of interest" factors.  
Carver
, 146 Ill. 2d at 356, 586 N.E.2d at 1277.  These factors explore the identification of the petitioning territory with the district to which annexation is sought and the corresponding likelihood of participation in school and extracurricular activities.  
Carver
, 146 Ill. 2d at 356, 586 N.E.2d at 1277.  The whole child factor recognizes that extracurricular participation in social, religious, and even commercial activities is important in a child's development as a beneficial supplement to academics.  Moreover, it is appropriate to consider the personal preferences or convenience of the petitioning parents and their children; however, more than the personal preferences on the part of the petitioners are required to support a change in school district boundaries.  
Board of Education of St. Charles Community Unit School District No. 303 v. Regional Board of School Trustees of the Kane County Educational Service Region
, 261 Ill. App. 3d 348, 364, 633 N.E.2d 177, 188 (1994).

Absent substantial detriment to either school district, 
some
 benefit to the educational welfare of the students in the detachment area must be shown to justify the grant of a petition for detachment and annexation.  
Carver
, 146 Ill. 2d at 358, 586 N.E.2d at 1278.

Uncontradicted testimony revealed that neither school district would suffer substantial detriment if the petition were granted.  It was undisputed that both school districts offered academic curricula and facilities of comparable quality.  Because of the absence of substantial detriment to either school district, only some benefit to the educational welfare of the students in the detachment area is sufficient to justify the granting of a petition for detachment and annexation.  
Carver
, 146 Ill. 2d at 358, 586 N.E.2d at 1278.

Defendants maintain that annexation into Winchester would only serve as a convenience for the Duketts.  They claim no other positive benefit would result from granting the petition since there are no distinguishing academic characteristics between the two districts.  They claim the Duketts are seeking the detachment merely to avoid paying tuition to attend Winchester.
  Defendants contend that the Duketts failed to present any evidence of educational welfare.  We disagree.

"Educational welfare" has been broadly interpreted.  
Carver
, 146 Ill. 2d at 359, 586 N.E.2d at 1279.  A number of factors have been relied upon to define this concept, such as the degree to which the child in the detachment area naturally identifies with the area to which annexation is sought (
Golf School District
, 89 Ill. 2d at 397-98, 433 N.E.2d at 243); distances from the petitioners' homes to various schools (
Virginia Community Unit School District No. 64 v. County Board of School Trustees
, 39 Ill. App. 2d 339, 344-45, 188 N.E.2d 886, 889 (1963)); convenience to petitioning parents and their children (
Oakdale Community Consolidated School District No. 1 v. County Board of School Trustees
, 12 Ill. 2d 190, 193-94, 145 N.E.2d 736, 737 (1957)); the promotion of continuity in the educational experience (
School District No. 106, Cook County, Illinois v. County Board of School Trustees
, 48 Ill. App. 2d 158, 162-63, 198 N.E.2d 164, 166-67 (1964)); and the choice of parents and children in the detachment area (
City National Bank of Kankakee v. Schott
, 113 Ill. App. 3d 388, 391, 447 N.E.2d 478, 480 (1983)).

Each of the above factors applies to the Duketts.  The testimony revealed that the Duketts' children naturally identify with Winchester because they attend school, church, scouts, and the 4-H Club there.  They consider Winchester their community.  The fact that Laura teaches at Winchester would be a great benefit to the children if they attended Winchester themselves.  Not only would it be convenient, but the educational benefits that the children would receive from the situation would be great.

The children have been attending school in Winchester for the last several years, and remaining at Winchester would allow them to maintain the friendships and familiarity that they have in the district.  Changing schools and friends would create a disruption.  To disrupt the children's lifestyle would not serve to benefit anyone.  Admittedly, North Greene would suffer some small detriment in tax revenues should the petition be grant­ed; however, the detrimental effect is 
de
 
minimus
 and not significant enough to outweigh the benefits that the children would receive by being annexed to Winchester.

Because neither district will be affected in any substantial measure, the determination should be made to turn solely upon the welfare of the children.  
Burnidge v. County Board of School Trustees
, 25 Ill. App. 2d 503, 509, 167 N.E.2d 21, 24 (1960).  The evidence shows that while detachment from North Greene and attachment to Winchester will neither benefit nor damage the schools or communities significantly, the educational benefit to the Dukett children from this change is likely to be considerable.

III. CONCLUSION

For the reasons stated, we reverse the judgment of the circuit court of Macoupin County.

Reversed.

KNECHT, J., concurs.

TURNER, J., dissents.

JUSTICE TURNER, dissenting:

While I disagree with the majority's general finding that state aid awarded on a per-pupil basis is not a factor to be considered in a detachment petition, I do agree that it was not a factor in this particular case because North Greene was not currently receiving the state aid.  See slip op. at 4.  Nonetheless, I respectfully dissent.  "The judiciary is 

ill[-]equipped to act as a super school board in assaying the complex factors involved in determining the best interest of the schools and the pupils affected by a change in boundaries."  
School Directors
, 26 Ill. 2d at 267, 186 N.E.2d at 283.  "When the record indicates the boards have considered the applicable statutory factors and their decision is supported by substantial evidence, the decision must be affirmed."  
Carver
, 146 Ill. 2d at 363, 586 N.E.2d at 1280.  Like the circuit judge, I find the Regional Board complied with the statutory requirements and that its decision was supported by substantial evidence.  Accordingly, I would affirm the circuit court's judgment.